**William R. BAIRD and Mary Extrom, Individually and on behalf of others similarly situated, Plaintiffs,**

**v.**

**Humphrey D. LYNCH, Individually and as District Attorney of Dane County, Wisconsin, et al., Defendants.**

**No. 71-C-254.**

United States District Court, W. D. Wisconsin.

Nov. 26, 1974.

Percy L. Julian, Jr. and Anthony J. Theodore, Madison, Wis., for plaintiffs.

Humphrey J. Lynch, Dist. Atty., for Dane County, Madison, Wis., for defendants Lynch and Ferris.

William Jansen, Deputy City Atty. for City of Madison, Madison, Wis., for defendant Couper.

Robert McConnell, Asst. Atty. Gen., of Wis., Madison, Wis., for defendants Hanson and Miller.

## OPINION AND ORDER

Before FAIRCHILD, Circuit Judge, and GORDON and DOYLE, District Judges.

This is a civil action in which plaintiffs seek declaratory and injunctive relief restraining defendants from enforcing a Wisconsin statute which places certain limitations on the sale and exhibition of devices designed to procure miscarriages or prevent pregnancy. (Because only declaratory and injunctive relief is sought, on its own motion the court has substituted the present incumbents of the respective offices for those who were incumbents when the action was commenced.) The complaint was filed just prior to a lecture scheduled for plaintiff Baird in which he planned to discuss the subject of birth control and abortion and to exhibit contraceptive devices. Plaintiffs sought a preliminary injunction restraining defendants from enforcing the statute against plaintiffs, Baird and Extrom. Judge Doyle denied that motion. Subsequently, plaintiffs applied for the convening of a three-judge court pursuant to 28 U.S.C. §§ 2281 and 2284, and this court was convened. Presently before the panel is the plaintiffs' "Motion for Summary Judgment or for the Determination of Legal Issues Prior to Trial." On the basis of the allegations in the complaint admitted in the answer and on the basis of the affidavits filed by the parties, we find that there is no genuine issue as to the material facts set forth in the following section.

## FACTS

Plaintiff Extrom is an unmarried woman who resides in Wisconsin and who wishes to purchase contraceptive devices and to listen to and observe speeches explaining and demonstrating the use of contraceptive devices. Plaintiff Baird directs the operation of a health center in the state of New York which distributes information on contraception, pregnancy, and abortion. The center also distributes contraceptive de-

vices to its patients. Baird lectures and speaks throughout the country on the subject of birth control and abortion. Often he illustrates his lectures by displaying contraceptive and abortion devices. Defendants are various law enforcement officials for the state of Wisconsin, for Dane County, for the city of Madison, and for the University of Wisconsin.

The challenged statute, § 450.11,[1] defines the term "indecent articles" in subsection one as devices designed to procure a miscarriage or prevent pregnancy. Subsection two prohibits the distribution of advertisements for "indecent articles" and also states: "nor shall [any person] exhibit or display any indecent article to the public." Subsection three, prohibiting the sale of such articles in vending machines, is not involved in this lawsuit. Subsection four provides in part: "No person shall sell or dispose of or attempt or offer to sell or dispose of any indecent articles to or for any unmarried person . . . ." Subsection five prescribes a penalty of a fine of from 100 to 500 dollars, or imprisonment not to exceed six months, or both.

Rennebohm Drug Stores, Inc. is the largest drug store chain in the city of Madison, owning and operating 16 drug stores out of a total of approximately 60 in the city. On May 27, 1971, the Rennebohm Corporation entered a plea of no contest and was found guilty by the Dane County Court, Branch II, of a charge of selling a non-prescriptive contraceptive device to an unmarried person contrary to § 450.11. That case was prosecuted by the then Dane County District Attorney. Since that prosecution it has been the policy of the Rennebohm Corporation to refuse to sell contraceptive devices to unmarried persons.

On July 22, 1971, plaintiff Extrom wished to purchase vaginal foam (a contraceptive device) and attempted to do so at three drug stores on the Capital Square in the city of Madison. In each instance she ascertained from an employee of the store that it carried vaginal foam. In two instances, the employee asked her if she were married, and, discovering that she was not, refused to sell her the foam. In the third instance, the plaintiff volunteered that she was not married, whereupon the employee stated that he could not sell her the foam.

Anticipating that plaintiff Baird's planned lecture and display in Madison might subject him to prosecution, counsel for Baird delivered a letter on July 16, 1971, to the receptionist in the district attorney's office. The letter described Baird's intended lecture and display and requested that the district attorney indicate what action he would take should Baird follow his plan through. As of July 23, 1971, the district attorney had made no response to

1. The statute reads as follows:

*Advertising or display of indecent articles, sale in certain cases prohibited* (1) As used in this chapter, the term "indecent articles" means any drug, medicine, mixture, preparation, instrument, article or device of whatsoever nature used or intended or represented to be used to procure a miscarriage or prevent pregnancy.

(2) No person, firm or corporation shall publish, distribute or circulate any circular, card, advertisement or notice of any kind offering or advertising any indecent article for sale, nor shall exhibit or display any indecent article to the public.

(3) No person, firm or corporation shall manufacture, purchase, or rent, or have in his or its possession or under his or its control, any slot machine, or other mechanism or means so designed and constructed as to contain and hold indecent articles and to release the same upon the deposit therein of a coin or other thing of value.

(4) No person shall sell or dispose of or attempt to offer to sell or dispose of any indecent articles to or for any unmarried person; and no sale in any case of any indecent articles shall be made except by a pharmacist registered under this chapter or a physician or surgeon duly licensed under the laws of this state.

(5) Any person, firm or corporation violating this section shall be fined not less than $100 nor more than $500 or imprisoned and not to exceed 6 months, or both.

the letter. The district attorney had stated publicly his intention to enforce the provisions of § 450.11.

On August 3, 1971, Baird addressed a large public audience including plaintiff Extrom at the University of Wisconsin—Madison on the subject of birth control, abortion, and population control. He limited his presentation to a speech accompanied by a display of facsimiles of birth control devices and by the distribution of literature. Although he wished to exhibit and distribute actual birth control and abortion devices, he did not do so for fear of prosecution by defendants. Various law enforcement officials employed by defendants, including a detective from the Dane County Sheriff's Department, were present in the audience. At the close of the lecture the detective closely examined the board upon which Baird had displayed the facsimile contraceptive devices.

Plaintiff Baird desires to return to Madison in the future for further presentations concerning birth control, abortion, and population control. Because he fears criminal prosecution, Baird would refrain from exhibiting or distributing to unmarried persons actual contraceptive or abortion devices on such future occasions unless prosecution under § 450.11 is restrained. Plaintiff Extrom desired to listen to and observe the lecture and exhibit in the form that Baird had originally intended to deliver. In addition, she wishes to purchase contraceptive devices.

### OPINION

The complaint sets forth two claims: (1) that § 450.11(2) is unconstitutional insofar as it prohibits the exhibition and display of contraceptive and abortion devices; (2) that § 450.11(4) is unconstitutional insofar as it prohibits the sale or disposal of such devices to unmarried persons.

#### 1. The first claim

▪ Plaintiffs have standing to challenge the constitutionality of § 450.-11(2). Plaintiff Extrom attended plaintiff Baird's lecture of August 3, 1971, wishing not only to hear the lecture but also to observe an exhibit of contraceptive and abortion devices. It is reasonable to infer that she would attend such lectures and displays in the future should they be presented in the Madison area. Plaintiff Baird has lectured throughout the country on the subjects of birth control and abortion and has often accompanied his lectures with exhibits of birth control and abortion devices. He desires to return to Madison to make another lecture and to accompany the lecture with a display of birth control and abortion devices. As the potential communicator and the potential receiver of certain forbidden communications, plaintiffs are appropriate parties to challenge the statute proscribing that communication. Flast v. Cohen, 392 U. S. 83, 99–100, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1969).

▪ We turn to the question of justiciability. Defendants contend that this is not a live, concrete controversy. Addressing this question in Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969), the Court stated that "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Here the then incumbent Dane County District Attorney stated publicly his intention to enforce the provisions of § 450.11. Baird attempted to learn from the district attorney whether his planned lecture and exhibit would subject him to prosecution under § 450.11. The district attorney did not respond. When Baird presented his lecture and display on August 3, 1971, law enforcement personnel employed by the defendants were present and at least one of them closely examined the display board upon which Baird had fastened facsimile contraceptive devices. From these facts it can fairly be inferred that, had Baird

displayed actual contraceptive or abortion devices, he would have subjected himself to a strong probability of prosecution under § 450.11(2). Since Baird's fear of prosecution is real and not speculative, and because he desires to present a lecture and exhibit in Madison in the future, we conclude that this case presents a live controversy and is therefore justiciable.

We turn to the issue of abstention. At an earlier stage of this lawsuit when this case was before Judge Doyle as a single-judge court on a motion for a preliminary injunction, he stated that there is a reasonable and natural construction of § 450.11(2) which avoids the constitutional question posed by these plaintiffs; that it is more than possible that the courts of Wisconsin will construe § 450.11(2) to proscribe only those displays and exhibits of contraceptive and abortion devices which are presented in a commercial setting; and that such a construction would not prohibit such exhibits and displays occurring in the course of a public lecture on the subject of such devices and on the larger subject of contraception and abortion. Judge Doyle noted that § 450.11(4) appears to be directed at both commercial and non-commercial distribution of contraceptive and abortion devices since it prohibits both the sale and disposal of such devices to unmarried persons. Notwithstanding the language of subsection (4) Judge Doyle concluded that the terms of subsection (2) suggest that it is directed at commercial enterprises and commercial transactions alone.

This panel adheres to the view Judge Doyle expressed in that earlier opinion. In Harman v. Forssenius, 380 U.S. 528, 534, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50 (1965), the Court stated:

> Where resolution of the federal constitutional question is dependent upon, or may be materially altered by, the determination of an uncertain issue of state law, abstention may be proper in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tenta-

tive decisions on questions of state law, and premature constitutional adjudication. [citations omitted] The doctrine, however, contemplates that deference to state court adjudication only be made where the issue of state law is uncertain.

The Court applied this principle in Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972), a case involving a challenge to a Michigan anti-pollution statute on a variety of federal constitutional grounds. In affirming the lower court's decision to abstain the Court stated: "[W]e are satisfied that authoritative resolution of the ambiguities in the Michigan law is sufficiently likely to avoid or significantly modify the federal questions appellants raise to warrant abstention . . . ." Id. at 512, 92 S.Ct. at 1758. Abstention was particularly appropriate "in view of the absence of countervailing considerations that we have found compelling in prior decisions. See e.g., Harman v. Forssenius, supra, [380 U.S.] at 537, 85 S.Ct. [1177] at 1183; Baggett v. Bullitt, 377 U.S. 360, 378–379, 84 S.Ct. 1316, 1326–1327, 12 L.Ed.2d 377 (1964)." Id.

In both Harman and Baggett the Court declined to abstain in part because the challenged statutes affected fundamental rights: the right to vote in Harman and the right to free speech in Baggett. The instant case also involves a fundamental right: that of free speech. However, Harman and Baggett differ from the instant case in that the statutes challenged in the former two cases did not admit of a construction which would avoid the federal constitutional question. The Baggett Court, considering a challenge to a statute requiring state employees to take a loyalty oath, stated: "We doubt . . . that a construction of the oath provisions, in light of the vagueness challenge, would avoid or fundamentally alter the constitutional issue raised in this litigation." Baggett v. Bullitt, supra, 377 U.S. at 375–376, 84 S.Ct. at 1325. Considering a challenge to certain Virginia voting

laws, the *Harman* Court stated (380 U. S. at 535–536, 85 S.Ct. at 1182):

> The state statutes involved here are clear and unambiguous in all material respects. . . . [T]he State does not point to any provision in the legislation which leaves "reasonable room for a construction by the Virginia courts which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem." Harrison v. NAACP, 360 U.S. 167, 177, 79 S.Ct. 1025, 3 L.Ed.2d 1152.

■ In the case before us the presence of the fundamental right of free expression weighs against abstention (as in *Baggett* and *Harman*) and the presence of a reasonable and natural construction of the challenged statute which obviates the federal constitutional questions weighs in favor of absention (as in *Lake Carriers*). While the question is difficult, our view of the probability that the state courts will adopt the more narrow construction of § 450.11(2), thus avoiding the constitutional questions raised here, persuades us that abstention is appropriate.

■ Although defendants have not moved for summary judgment, it is proper to render judgment in their favor if it appears that they are entitled to judgment as a matter of law. 10 Wright and Miller, Federal Practice and Procedure § 2720 (1972). However, we have concluded that this first claim should not be dismissed. In absention cases similar to the instant case, the Supreme Court has expressed a clear preference for retention of jurisdiction rather than dismissal. Lake Carriers Ass'n v. MacMullan, *supra*, 406 U.S. at 512–513, 92 S.Ct. 1749; Zwickler v. Koota, 389 U.S. 241, 244 n. 4, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); C. Wright, Law of Federal Courts § 52 (1970). We shall retain jurisdiction of plaintiffs' first claim pending institution by plaintiffs of appropriate proceedings in Wisconsin courts. If no such proceedings have been commenced within 60 days of the date of this opinion and order, defendants may apply to this court for an order dismissing this claim on its merits.

### 2. The second claim

#### a. *Class Action*

In the second claim plaintiffs seek to enjoin defendants from enforcing subsection (4) of § 450.11, which prohibits the sale or disposal of contraceptive and abortion devices to unmarried persons. Plaintiffs seek to bring this claim as a class action on behalf of all unmarried persons who wish to obtain contraceptive devices. Under Rule 23(c)(1), Federal Rules of Civil Procedure, the court must determine by order whether this action may be brought as a class action.

■■ As appears in the next subsection of this opinion, plaintiff Baird lacks standing to assert this second claim and therefore this claim must be dismissed as to him. Thus, plaintiff Extrom is the sole representative of the class. Before applying the specific requirements of Rule 23 we note that plaintiffs have given a sufficiently precise definition of the class. Of course, as persons who are single now become married and persons presently married become single the content of the class will change. However, it is not necessary that each member be ascertainable at the present; the Advisory Note to Rule 23 states that in (b)(2) class actions (as will appear later in this opinion, this is a (b)(2) class action) in the civil rights field, usually the members of the class are "incapable of specific enumeration." 39 F.R.D. 69, 102. Carpenter v. Davis, 424 F.2d 257 (5th Cir. 1971). We also note that since the named plaintiff has demonstrated that she has standing to assert this claim (as appears in the next subsection of this opinion) it is not necessary that any of the other members of the class show that they have standing. Fujishima v. Board of Education, 460 F.2d 1355 (7th

Cir. 1972); see also Advisory Note to Rule 23(b)(2), 39 F.R.D. 69, 102.

▮ Turning to the specific requirements of Rule 23 we conclude that they have been satisfied here. The only provision in Rule 23(a) which merits discussion is the final prerequisite: that the representative parties will fairly and adequately protect the interests of the class. It is true that the sole representative of the class here is a woman, even though the class consists of both men and women. However, we are persuaded that the similarity of the interests of unmarried women challenging § 450.-11(4) to the interests of unmarried men is sufficient, so that men will be fairly and adequately represented. Further, we conclude that this action satisfies the provision of Rule 23(b)(2), requiring that:

> [T]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . ..

### b. *Standing and ripeness*

▮ Since plaintiff Baird has not shown that he is unmarried or that he desires to obtain contraceptive devices, he lacks standing to assert this second claim. As to plaintiff Baird defendants are entitled to judgment of dismissal of this claim.

▮ Plaintiff Extrom does have standing. On three occasions she attempted to purchase contraceptives in drug stores in Madison, Wisconsin, and on all three occasions she was turned down because she was unmarried. We can infer reasonably that the drug stores which refused to sell contraceptives to plaintiff did so for fear of prosecution under § 450.11(4). That fear, in turn, appears to be reasonable in light of the 1971 prosecution of a Madi-

son drug store for selling a contraceptive in violation of § 450.11(4). Thus, plaintiff has a present desire to obtain contraceptives, and that desire is thwarted by drug stores which feel obligated to abide by the terms of the challenged statute. This is a concrete, live controversy in which plaintiff Extrom has a sufficient stake to give her standing.

Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961), is not to the contrary. That case involved a challenge to a Connecticut statute which prohibited the use of contraceptive devices and the giving of medical advice in the use of such devices. The Court's conclusion that the case was not justiciable rested primarily on the fact that the challenged statute had not once been enforced during its eighty-year life.

### c. *The merits*

In Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), the Court struck down a Massachusetts statute restricting the sale of contraceptives. As construed by the Massachusetts Supreme Judicial Court the statute distinguished between the acquisition of contraceptives for the purpose of preventing pregnancy on the one hand and for the purpose of preventing the spread of disease on the other. For the former purpose, only married persons could obtain contraceptives, and they could obtain them only from doctors or from druggists by prescription. For the latter purpose, both married and single persons could obtain contraceptives, and they could obtain them from anyone. The appellee was convicted of violating the statute by giving a package of vaginal foam—a contraceptive—to a woman at the close of a lecture he delivered on the subject of contraception.

The Court examined three state interests which the statute might be considered to advance: deterrence of premarital[2] sexual intercourse; protec-

---

2. In this present opinion, we use the words "premarital sexual intercourse" to mean sexual intercourse between a man and a woman, neither of whom is married to anyone.

748

tion of the public health by regulating the distribution of potentially harmful articles; and prohibition of contraception. Using an equal protection analysis the Court concluded that none of these purposes rationally explained the different treatment accorded married and unmarried persons under the statute. Because the statute failed to meet this lenient test, the Court stated that it did not need to decide the question whether the statute impinged upon a fundamental interest. *Id.* at 447, n. 7, 92 S.Ct. 1029.

The Court concluded that the Massachusetts statute was not designed to deter premarital sexual intercourse. Four reasons support this conclusion. First, by prohibiting unmarried persons from using contraceptives for the purpose of preventing pregnancy, the state was prescribing the chance that the woman would bear an unwanted child as punishment for those who violated the fornication statute. On the other hand, fornication in Massachusetts is a misdemeanor carrying a penalty of three months imprisonment or a thirty dollar fine. Because the Court had difficulty believing that the state considered the two punishments—that the woman bear an unwanted child, on the one hand, and imprisonment for three months or a thirty dollar fine, on the other—to be equivalent, the Court found it unlikely that the contraception statute was intended to serve the same purpose as the fornication statute. Second, the Court noted that, since contraceptives were freely available to unmarried persons in Massachusetts for the purpose of preventing disease, the statute could not be considered to be an effective deterrent to premarital sexual intercourse. Third, the statute did not attempt to regulate sexual intercourse between married persons and unmarried persons, since the former could purchase contraceptives without regard to their intended use. Fourth, the Massachusetts contraception statute carried a penalty of up to five years imprisonment while fornication in that state is punishable by a thirty dol-

lar fine or three months in jail. The Court found it difficult to believe that the state legislature adopted a statute carrying a five-year penalty in order to deter the commission of a ninety-day type of misdemeanor.

Of these four reasons the second and fourth have no application to the Wisconsin statute challenged in this claim. Since § 450.11 does not permit the distribution of contraceptives to unmarried persons for the prevention of disease or for any other purpose, it must be considered a more effective deterrent to premarital sexual intercourse than the Massachusetts statute. Also, the punishment for violation of § 450.11 (a fine of between 100 to 500 dollars or imprisonment not to exceed six months or both) is comparable to the punishment for violations of Wisconsin's fornication statute, § 944.15 (a fine of not more than $200 or imprisonment not to exceed six months or both). Thus, it cannot be argued on the basis of disparate penalties that § 450.11 was not intended to deter violations of the fornication statute.

The first and third reasons offered by the *Eisenstadt* Court do apply to § 450.-11(4). That statute imposed upon those who violate the fornication statute the risk that the woman would bear an unwanted child. The fornication statute itself carries a penalty of only 200 dollars, six months, or both. The enormity of the first consequence, if viewed as a punishment, in contrast to the second suggests that § 450.11(4) is intended to serve some purpose other than deterring violations of the fornication statute. Also, like the Massachusetts statute, § 450.11(4) does not attempt to affect sexual intercourse between married persons and unmarried persons. These reasons cast doubt on whether § 450.11(4) is seriously intended to serve the purpose of deterring premarital sexual intercourse. Nevertheless, because two of the more persuasive reasons for rejecting such a legislative intent in *Eisenstadt* are not present here, we cannot say with reasonable certainty that § 450.11(4) is not in-

tended to deter premarital sexual intercourse. Therefore, we shall consider that purpose in determining the constitutionality of § 450.11(4). Before proceeding to that determination, however, we shall consider the remaining two purposes which might arguably be advanced for the enactment of § 450.11(4).

In *Eisenstadt* the Court examined the possibility that the challenged statute was intended to serve the state's interest of protecting the public health by regulating the distribution of potentially harmful articles. In their brief the defendants in the present case concede that this is not an interest served by § 450.11(4).

The final possible state interest mentioned in *Eisenstadt* is simply the prohibition of contraception on the ground that the legislature considers it an evil in itself. Without deciding whether this interest is a legitimate one, the Court there concluded that equal protection does not allow a state to further that interest by making contraceptives available to married persons while limiting or eliminating their availability to unmarried persons. *Eisenstadt, supra* at 453, 92 S.Ct. 1029. That reasoning applies with equal force to § 450.11(4). Thus, the sole state interest which may support the constitutionality of the classification between married and unmarried persons embodied in § 450.11(4) is its interest in preventing premarital sexual intercourse.[3]

■ The plaintiffs have challenged § 450.11(4) on equal protection grounds. We turn now to the question whether to test the statutory classification between married and unmarried persons by the rational relationship test, with the challenger of the statute bearing the burden of persuasion, or by the more rigorous compelling state interest test, with the state bearing the burden of persuasion.

The law requires courts to apply the former test, with the burden on the challenger, unless the challenged statute (or regulation or practice) affects a "fundamental interest" or creates a "suspect classification." In the latter case, the state bears the burden of showing how compelling its interest may be; depending upon how compelling its interest may be, showing that the specific measure is necessary to its achievement; and showing that the specific measure is sufficiently narrowly drawn to achieve the state's interest. Roe v. Wade, 410 U.S. 113, 155, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Shapiro v. Thompson, 394 U.S. 618, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Aptheker v. Secretary of State, 378 U.S. 500, 508, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964).

■ We have concluded that § 450.11(4) affects a fundamental interest of women.

■ In Roe v. Wade, *supra*, the Court struck down a state statute strictly regulating the availability of abortions to pregnant women. In that decision, the Court stated that only fundamental personal rights are included within the constitutional guarantee of privacy. The Court continued (*supra*, 410 U.S. at 153, 93 S.Ct. at 727):

> This right of privacy . . . is broad enough to encompass a woman's decision whether or not to terminate her pregnancy. The detriment that the State would impose upon the pregnant woman by denying this choice altogether is apparent. Specific and direct harm medically diagnosable even in early pregnancy may be involved. Maternity, or additional offspring, may force upon the woman a distressful life and future. Psychological harm may be imminent. Mental and physical health may be taxed by child

3. In their brief, defendants state that § 450.11(4) serves two additional interests: it gives a married woman protection against a pregnancy which might seriously endanger her health; it provides protection against the transmission of disease through marital sexual intercourse. However, these interests lend no force to defendants' constitutional argument since they do not explain the differential in the treatment of married and unmarried persons.

care. There is also the distress, for all concerned, associated with the unwanted child, and there is the problem of bringing a child into a family already unable, psychologically and otherwise, to care for it. In other cases, as in this one, the additional difficulties and continuing stigma of unwed motherhood may be involved.

The reasons enumerated in the above quotation for including the abortion decision within the right of privacy are equally persuasive for including the contraception decision within that right. It is true that women who are denied contraceptives and become pregnant can now legally terminate their pregnancy by having an abortion. However, abortion is an expensive, inconvenient, and psychologically difficult means of birth control. Moreover, it is safe to say that to some women who are willing to use contraceptive devices, aborting a pregnancy is unacceptable. Such women face the full array of adverse consequences listed in *Roe*, including the unwanted pregnancy, the raising of an unwanted child, and, in some cases, the difficulties connected with unwed motherhood. We are persuaded that that decision whether to become pregnant as a result of sexual intercourse is a fundamental interest of women, protected by the constitutional right of privacy.

This conclusion encompasses both married and unmarried women. Indeed, the psychological stress for the pregnant unmarried woman is probably the greater. This reasoning finds support in *Roe*, *supra*, where the court held that all women in their first three months of pregnancy have a fundamental interest in making the abortion decision, regardless of whether they were married or unmarried at the time of the act of intercourse leading to pregnancy.

The *Eisenstadt* Court also addressed this issue. After declining to decide whether there is an absolute right to contraceptives, the Court continued (405 U.S. at 453, 92 S.Ct. at 1038):

[W]hatever the rights of the individual to access to contraceptives may be, the rights must be the same for the unmarried and the married alike.

If under *Griswold* [v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed. 2d 510 (1965)] the distribution of contraceptives to married persons cannot be prohibited, a ban on distribution to unmarried persons would be equally impermissible. It is true that in *Griswold* the right of privacy in question inhered in the marital relationship. Yet the marital couple is not an independent entity with a mind and heart of its own, but an association of two individuals each with a separate intellectual and emotional makeup. If the right of privacy means.anything, it is the right of the *individual*, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child. [emphasis in original]

This language confirms our conclusion that the decision whether to become pregnant as a result of sexual intercourse is a fundamental right for women, married and unmarried.

We have observed that the interests of unmarried men and those of unmarried women in obtaining contraceptive devices are sufficiently similar to permit plaintiff Extrom to maintain this class action on behalf of both. Obviously, unmarried men have an interest in whether pregnancy will result from sexual intercourse, including the burden of financial support which may be imposed upon them by law, if not by their own sense of responsibility. For sensitive unmarried men, far more than an economic interest is at stake. We find it unnecessary to explore the dimensions of these interests, however, or to determine whether they are "fundamental," because the fundamental interest of unmarried women in whether pregnancy will result from sexual intercourse with unmarried men is inevitably at stake

whenever access to contraceptives of various kinds is barred to unmarried men and unmarried women, as it is by § 450.11(4).

Having determined that § 450.11(4) affects a fundamental interest of unmarried women in deciding whether to become pregnant as a result of sexual intercourse, we place upon the state the burden of establishing how compelling may be the interest it desires to achieve; the burden of establishing that if the state's interest is compelling, this specific measure is necessary to its achievement; and the burden of establishing that this specific measure is sufficiently narrowly drawn to achieve the state's interest.

■ Earlier in this opinion we have concluded that the only state interest upon which defendants may rely with respect to § 450.11(4) is the deterrence of premarital sexual intercourse, or, more precisely, its interest in the absence of, or low incidence of, premarital sexual intercourse. In light of recent Supreme Court decisions [4] protecting the right of privacy, there is room for doubt whether the state enjoys any legitimate interest in the absence of, or low incidence of, premarital sexual intercourse. However, for the purpose of this opinion, we are prepared to assume that such interest may exist. The problem is to define and evaluate its significance and urgency, and to determine whether the particular measure chosen to achieve it, and challenged in this lawsuit, is constitutionally permissible.

Defendants have made no effort to elaborate upon the nature and quality of the state's interest in the absence of, or low incidence of, premarital sexual intercourse, perhaps considering them too obvious to require elaboration. We will make the effort. Presumably the reason for eliminating or lessening the incidence of premarital sexual intercourse is to encourage the formation of the family unit, thus increasing the likelihood that a child in Wisconsin will be raised in a home where both parents are present to provide the love, money, and training considered important for a healthy childhood. It is not self-evident that premarital sexual intercourse is destructive of the stability of family units when they are eventually formed. Presumably, the argument would be that if the enjoyment of premarital sexual intercourse is unavailable, a man and a woman sexually attracted to one another are more likely to marry. There is force to this argument. However, there is force to the opposing argument that in the absence of premarital sexual experience, marriage is more likely to precede the discovery of grave underlying problems of incompatibility. According to this theory, among sexually inexperienced couples there may be a higher incidence of unstable marriages, the dissolution of which may leave children to be supported by the state.

Of course, it is not for this court to determine which of these two viewpoints should prevail. But the existence of obvious and practical considerations tugging in both directions tends to diminish the clarity and urgency of the government's interest in the absence of, or low incidence of, premarital sexual intercourse. That is, the existence of these competing considerations renders the state's interest less compelling than it might otherwise be.

Turning to the question of means to achieve its interest in the absence of, or

4. The right of privacy includes activities relating to marriage, Loving v. Virginia, 388 U.S. 1, 12, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) ; procreation, Skinner v. Oklahoma, 316 U.S. 535, 541–542, 62 S.Ct. 1110, 86 L. Ed. 1655 (1942) ; contraception, Eisenstadt v. Baird, 405 U.S. 438, 453–454, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), and Griswold v. Connecticut, 381 U.S. 479, 485–486, 85 S. Ct. 1678, 14 L.Ed.2d 510 (1965) ; abortion, Roe v. Wade, 410 U.S. 113, 153, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) ; and possession of obscene materials, Stanley v. Georgia, 394 U.S. 557, 564, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1959).

low incidence of, premarital sexual intercourse, it appears that the state of Wisconsin has chosen two. Both represent supposed deterrents. One is direct, one indirect.

The direct deterrent measure is embodied in § 944.15, which threatens those who engage in premarital sexual intercourse with a fine or imprisonment, or both. To be required to part with one's money or to be imprisoned obviously impair certain interests of the person affected. But the constitutionality of § 944.15 is not challenged in this lawsuit. Therefore, we are not called upon to explore the nature or quality of the individual interests affected by a fine or imprisonment; nor to consider whether the criminal sanction is necessary to the achievement of the state's interest in the absence of, or low incidence of, premarital sexual intercourse; nor to consider whether the criminal prohibition is drawn with sufficient narrowness to achieve this state interest. We express no opinion on these questions.

■ But the constitutionality of the state's indirect deterrent measure, embodied in § 450.11(4), is challenged in this suit. We have concluded that this measure affects a fundamental interest of unmarried women in whether pregnancy will result from sexual intercourse. We now conclude that the state's interest in the absence of, or low incidence of, premarital sexual intercourse, is insufficiently compelling to justify the denial or impairment of this fundamental interest of unmarried women. We now conclude also that the state has failed to make a showing that the sanction embodied in § 450.11(4)—not applied directly to premarital sexual intercourse, but indirectly through threatening with fine or imprisonment those

who make contraceptives available for use in premarital sexual intercourse—is necessary to the achievement of the state's interest.

■ The prohibition embodied in § 450.11(4) applies to "articles . . . to be used to procure a miscarriage," as well as "articles . . . to be used to . . . prevent pregnancy." We consider the statute to be severable in this respect, and this opinion and order is limited to articles to be used to prevent pregnancy.

## ORDER

Accordingly, it is hereby ordered:

(1) That plaintiffs' motion for summary judgment as to the first claim is denied and that if no proceedings in connection with the first claim have been commenced in a Wisconsin state court within 60 days of the date of this order, defendants may apply to this court for an order dismissing this claim on its merits;

(2) that plaintiff Extrom's second claim may be brought by her as a class action on behalf of all unmarried persons who wish to obtain contraceptive devices;

(3) that because plaintiff Baird lacks standing to raise the second claim, judgment may be entered dismissing that claim as to him;

(4) that plaintiff Extrom's motion for summary judgment as to the second claim is granted and that defendants are permanently enjoined from enforcing the provisions of Wis.Stat. § 450.11(4) (1971), with respect to articles to be used to prevent pregnancy.