**NATIONAL ORGANIZATION FOR WOMEN, INC.; Delaware Women's Health Organization, Inc.; and Summit Women's Health Organization, Inc., Plaintiffs,**

v.

**Joseph M. SCHEIDLER; Pro–Life Action League, Inc.; Randall A. Terry; Andrew Scholberg; Timothy Murphy; Monica Migliorino; Project Life; and Operation Rescue, Defendants.**

No. 86 C 7888.

United States District Court,
N.D. Illinois,
Eastern Division.

March 31, 1997.

---

Miriam Goldman Bahcall, Rawn Howard Reinhard, Ungaretti & Harris, Chicago, IL, John A. Bannon, Dalya Sarai Khan, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, Grace Allen Newton, Judi A. Lamble, Fay Clayton, Sara Norris Love, Robinson, Curley & Clayton, P.C., Chicago, IL, Patricia Ireland, Kim Gandy, National Organization for Women, Inc., Washington, DC, Thomas P. Monaghan, Monaghan & Sekulow, New Hope, KY, Sharon Thompson, Durham, NC, Robert Lerner, Perry, Lerner & Quindel, Milwaukee, WI, Jack L. Block, Angela Youngsun Im, Sachnoff & Weaver, Ltd., Chicago, IL, for plaintiffs.

Edward R. Grant, Hinshaw & Culbertson, Chicago, IL, Thomas L. Brejcha, Jr., James L. Fox, Abramson & Fox, Chicago, IL, Ann–Louise Lohr, Americans United for Life Legal Defense Fund, Chicago, IL, Kevin J. Todd, Hoogendoorn, Talbot, Davids, Godfrey & Milligan, Chicago, IL, Sara Norris Love, Robinson, Curley & Clayton, P.C., Chicago, IL, Robert Samuel Harlib, Chicago, IL, Diane Dilger Jones, Pope, Ballard, Shepard &

Fowle, Ltd., Chicago, IL, Timothy C. Klenk, Ross & Hardies, P.C., Chicago, IL, Timothy Belz, Belz & Beckemeier, St. Louis, MO, Lawrence M. Gavin, Bell, Boyd & Lloyd, Chicago, IL, Vincent P. McCarthy, Atty. at Law, New Milford, CT, Jennifer Craigmile Neubauer, Lake Forest, IL, Craig Parshall, Jaeger, Parshall & Umpletz, Menomonee Falls, WI, Alan Pollack, Pollack & Greene, New York City, Philip R. King, Bates, Meckler, Bulger & Tilson, Chicago, IL, Charles Francis Redden, Pretzel & Stouffer, Chtd., Chicago, IL, David J. Loughnane, Price, Tunney, Loughnane, Reiter & Bruton, Chicago, IL, for defendants.

## *MEMORANDUM OPINION AND ORDER*

COAR, District Judge.

Plaintiffs, the National Organization for Women, Incorporated ("NOW"), Delaware Women's Health Organization, Incorporated ("DWHO"), and Summit Women's Health Organization, Incorporated ("Summit"), have moved to certify the following two classes certified:

(1) The class of all women's health centers in the United States at which abortions are performed, pursuant to Fed.R.Civ.P. 23(b)(2) and 23(b)(3) [the "Clinic Class"]; and (2) the class of all women who are not NOW members who have used or may use the services of women's health centers that provide abortions, pursuant to Fed. R.Civ.P. 23(b)(2) [the "NOW Non–Member Class"].[1]

### *Legal Standard for Motions for Class Certification*

Motions for class certification are governed by Fed.R.Civ.P. 23, which provides that the following prerequisites must be satisfied in order for one or more members of a class to sue as representatives of others in the class: (1) the class is so numerous that joinder of all members is impracticable ["numerosity"]; (2)

---

**1.** Plaintiffs' Motion for Class Certification ("Motion") at 1. NOW represents its own members as an associational plaintiff, for which no class certification is required. *See N.O.W. v. Scheidler,* 897 F.Supp. 1047, 1067–70 (N.D.Ill.1995); *see also Hunt v. Washington State Apple Advertising*

*Comm'n,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *New York State N.O.W. v. Terry,* 886 F.2d 1339, 1348–49 (2d Cir.1989), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990).

there are questions of law or fact common to the class ["commonality"]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"]; and (4) the representative parties will fairly and adequately protect the interests of the class ["adequacy of representation"]. Fed.R.Civ.P. 23(a). In addition to these requirements, an action must satisfy one of the three sections of Rule 23(b). *Id.;* Charles Wright, Arthur Miller, and Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1759 (1986). Thus, the action sought to be brought as a class action must be such that (a) the prosecution of separate actions by or against individual members of the class would create a risk of incompatible or varying adjudications with respect to the individual member or adjudications which would necessarily implicate the rights of other members not party to the action; (b) the opposing party has acted or refused to act on grounds generally applicable to the class as a whole; or (c) the court finds that the questions of law or fact common to the members of the class as a whole predominate over any questions affecting only individual members and that a class action is the most efficacious method of adjudication. Fed.R.Civ.P. 23(b).

For purposes of determining a motion for class certification, the court will deem true all of the allegations in the complaint. *Johns v. DeLeonardis,* 145 F.R.D. 480, 482 (N.D.Ill.1992). Moreover, the court will not consider the merits of the case; rather, the court focuses on whether the certification requirements are satisfied. *In re VMS Sec. Litig.,* 136 F.R.D. 466, 473 (N.D.Ill.1991). If the party seeking class certification meets each of the certification requirements, the court must certify the proposed class. *Vickers v. Trainor,* 546 F.2d 739, 747 (7th Cir.1976); *Fujishima v. Board of Educ.,* 460 F.2d 1355, 1360 (7th Cir.1972). However, the court has broad discretion concerning whether a proposed class satisfies certification requirements. *See Patterson v. General Motors Corp.,* 631 F.2d 476, 480 (7th Cir.1980), *cert. denied,* 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981).

## Background

Plaintiffs bring this lawsuit seeking injunctive and monetary relief from defendants' unlawful racketeering activities aimed at driving the class clinics, including DWHO and Summit, out of business-either temporarily or permanently-and thereby preventing women from availing themselves of the services provided by those clinics. DWHO and Summit also seek damages to compensate themselves and the Clinic Class for costs incurred to defend against defendants' illegal conduct, and for damage to their property caused by defendants and their coconspirators.

Plaintiffs seek class-wide relief against defendants Joseph M. Scheidler ("Scheidler"); Randall A. Terry ("Terry"); Andrew Scholberg ("Scholberg"); Timothy Murphy ("Murphy"); Monica Migliorino ("Migliorino"); Pro–Life Action League, Incorporated ("PLAL"); Project Life, Incorporated ("Project Life"); and Operation Rescue ("OR") (collectively, the "defendants"), for their violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.

For a more detailed account of the facts and the procedural history of the underlying action, see generally, *N.O.W. v. Scheidler,* 510 U.S. 249, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994); *N.O.W. v. Scheidler,* 968 F.2d 612, 614, 625–30 (7th Cir.1992), *cert. granted,* 508 U.S. 971, 113 S.Ct. 2958, 125 L.Ed.2d 659 (1993); *N.O.W. v. Scheidler,* 897 F.Supp. 1047 (N.D.Ill.1995); *N.O.W. v. Schiedler,* 1995 WL 59228 (N.D.Ill. Feb. 10, 1995).

In opposition to plaintiffs' motion for class certification, defendants Terry, PL, and OR (collectively, "defendants TPO") jointly filed a Memorandum in Opposition to Plaintiffs' Motion for Class Certification ("TPO Memo"). Defendants Scheidler, Scholberg, Murphy, and the PLAL (collectively, "defendants SSMP") jointly filed a response to plaintiffs' motion for class certification ("SSMP Resp."). In addition, defendant Migliorino, individually, filed a memorandum of law in opposition to plaintiffs' motion for class certification ("Migl.Memo") in which she expressly adopts all assertions and arguments of her codefendants relating to plain-

tiffs' motion for class certification. (Migl. Memo. at 1).

## Discussion

## I. Propriety of the Proposed Classes

■ As noted above, parties seeking class certification must prove that the proposed class satisfies the requirements of (1) numerosity, (2) commonality, (3) typicality, and (4) adequate representation under Rule 23(a), and fits into one of the three categories of Rule 23(b). However, as a precursor to this analysis, the Court must determine whether an implicit requirement of Rule 23(a) has been met-the "definiteness" requirement. *See Alliance to End Repression v. Rochford,* 565 F.2d 975, 977 (7th Cir.1977). Indeed, "[b]efore a class can be certified, the party seeking certification must show that an identifiable class exists. An identifiable class exists if its members can be ascertained by reference to objective criteria. A class description is insufficient, however, if membership is contingent on the prospective member's state of mind." *Gomez v. Illinois State Bd. of Educ.,* 117 F.R.D. 394, 397 (N.D.Ill. 1987) (citations omitted). Moreover, "[w]hether a class is sufficiently definite for purposes of certification is determined on a case-by-case basis." *Stalling v. Califano,* 86 F.R.D. 140, 141–42 (N.D.Ill.1980) (citing *Alliance to End Repression,* 565 F.2d at 977). This requires the Court to determine whether an identifiable class exists pursuant to the definition of the proposed class.

■ The Seventh Circuit has held that the scope of a class may be defined by reference to the defendants' conduct. *Alliance to End Repression,* 565 F.2d at 978. In fact, so long as the class is defined in terms of the defendants' conduct as opposed to the state of mind of the plaintiffs (or the defendants), and is otherwise ascertainable, the class satisfies the definiteness requirement. *See id.* & n. 7 ("[This court has made it clear that a class that satisfies all of the other requirements of Rule 23 will not be rejected as indefinite when its contours are defined by the defen-

dants' own conduct.]").[2] A class so defined is of sufficient scope even if persons not presently identified are included in the class or the class membership is subject to change. *Stalling,* 86 F.R.D. at 142 (citations omitted).

### A. *The "Clinic Class"*

■ Plaintiffs define the Clinic Class as "the class of all women's health centers in the United States at which abortions are performed...." Defendants TPO, joined by defendant Migliorino, oppose the certification of DWHO and Summit as class representatives and on the grounds that the Clinic Class "lacks standing" and is "too broad." (Migl. Memo. at 3). The Clinic Class is too broad, defendants TPO argue, because, "by definition, it includes *every* abortion center, regardless of whether the particular center has suffered any direct, cognizable injury from defendants' activities." (TPO Memo. at 3 (emphasis in original) (footnote omitted)). Assumed in defendants TPO's contention is a requirement that every potential class member must have suffered a cognizable injury. However, "[a] class may be certified even though the initial definition includes members who have not been injured or do not wish to pursue claims against the defendant." *Elliott v. ITT Corp.,* 150 F.R.D. 569, 575 (N.D.Ill.1992). Moreover, in deciding motions for class certification, the court may deem true all allegations in the complaint. *Johns v. DeLeonardis,* 145 F.R.D. 480, 482 (N.D.Ill.1992). Here plaintiffs have expressly alleged that defendants' unlawful conduct has injured every clinic within the scope of the proposed class. (Third Amended Complaint ("Comp.") ¶¶ 1–3). Furthermore, the nature of the claims asserted against the defendants necessarily implicates the proposed class of plaintiffs-health centers in the United States at which abortions are performed. For example, in counts I and II plaintiffs alleged that defendants are engaged in a conspiracy to completely disable through unlawful means health clinics at which abortions are performed. Thus, the

---

**2.** The court reasoned "[t]o hold [otherwise] would permit class action certification to be avoided merely by expanding the scope of [the defendants'] illegal conduct in order to make the

class of plaintiffs less well-defined. We reject any such result." *Alliance to End Repression,* 565 F.2d at 978 n. 7.

Court finds that the proposed class is not overbroad in scope, nor does it raise concerns of justiciability. Accordingly, the definiteness requirement is satisfied as to the Clinic Class.[3]

### B. The "NOW Non–Member" Class

■■■ Plaintiffs define the NOW Non–Member Class as "the class of all women who are not NOW members who have used or may use the services of women's health centers that provide abortions . . . ." (Motion at 1). This class effectively contains two subclasses: (1) NOW non-members who have used the services of women's health centers that provide abortions; and (2) NOW non-members who in the future may use the services of women's health centers that provide abortions. Each defendant challenges the propriety of the NOW Non–Member Class. Defendant Migliorino asserts, individually, that the class membership is defined or contingent upon the state of mind of the prospective class members and thus does not satisfy the definiteness requirement. Defendants TPO, joined by Migliorino, contend that, in light of the definition of the NOW Non–Member Class, the prospective class members lack standing under RICO. Finally, defendants SSMP, joined by Migliorino, advance a series of policy arguments against granting certification. Each of these arguments is addressed in turn.

Defendant Migliorino's "definiteness" argument is directed against the NOW Non–Member Class definition to the extent that it encompasses the latter subclass. Specifically, Migliorino argues that,

> because Plaintiffs' proported [sic] non-NOW member class is defined in substantial part by those who 'may use' the services of the class clinics, the proported [sic] class is, in effect, determined by the future subjective intentions of an unidentified group of women who 'may' decide to have an abortion, and if so, 'may' decide to have

> that abortion at the Plaintiffs' class clinics rather than at other health-care sites (e.g. [,] hospitals).

(Def. Migl. Memo. at 2–3 (italics added)). While Migliorino's argument may be overstated, it identifies a possible flaw in the definition of the NOW Non–Member Class—that membership is seemingly contingent on the state of mind of the prospective class members. Indeed, when membership is defined solely by state of mind, the case is generally deemed unascertainable. See De Bremaecker v. Short, 433 F.2d 733, 734 (5th Cir.1970); Chaffee v. Johnson, 229 F.Supp. 445, 448 (S.D.Miss.1964), aff'd on other grounds, 352 F.2d 514 (5th Cir.1965), cert. denied, 384 U.S. 956, 86 S.Ct. 1582, 16 L.Ed.2d 553 (1966); Capaci v. Katz &· Besthoff, Inc., 72 F.R.D. 71, 78 (E.D.La.1976). However, the Seventh Circuit has warned that

> the 'state of mind' rubric has been applied too loosely to reject class action suits where the class members could be identified by some action or objective manifestation . . . . The change of characterization of the issue in the case from one of state of mind to conduct should not serve as a talisman to decide the difficult issue of whether an identifiable class exists. At best, the general statement that state of mind issues are present serves as a shorthand method of alerting the court and the parties that there might be difficulty in identifying the class members . . . . [T]he presence of state of mind issues should not be an automatic reason for denying class certification.

Simer v. Rios, 661 F.2d 655, 669 (7th Cir. 1981). Fortunately, the Court need not decide this issue. In their reply memorandum, plaintiffs effectively cured any potential defect by explicating the contours of the proposed class as follows: "The class includes women who either have in the past or will in the future attempt to use the class clinics and

---

**3.** Defendants TPO argue that not only is the Clinic Class, as it is presently defined, uncertifiable, but even a class of clinics that have been victims of defendants' racketeering is uncertifiable because it is too amorphous and presumes a meritorious claim. Because the Court concludes that the Clinic Class satisfies the definiteness

requirement without modification, it does not reach the issue of amorphousness. However, to the extent that defendants TPO's second argument applies to the NOW Non–Member Class, as it has been modified by this memorandum opinion, see infra, the Court will address it in the following section.

be affected by defendants' unlawful activities." (Plaintiffs Reply in Support of Their Motion for Class Certification ("Pls.Reply.") at 10). The Court thus modified the definition of the proposed class in light of this description. Accordingly, the NOW Non–Member Class is defined as follows:

> The class of women who are not NOW members and whose rights to the services of women's health centers in the United States at which abortions are performed have been or will be interfered with by defendants' unlawful activities.

(*See id.*). In light of this modification, membership in the classes sought to be certified is based exclusively on the defendants' conduct with no particular state of mind required.[4] Thus, there is no definiteness problem, as implied in Rule 23, created by this class. *Alliance to End Repression*, 565 F.2d at 978 (citation omitted). Moreover, the scope of this class is sufficiently defined even if persons not identified at present are included in the class of the class membership might change. *Alliance*, supra; *Baird v. Lynch*, 390 F.Supp. 740, 746 (W.D.Wis.1974). The Court shall now consider Rule 23(a)'s four explicit requirements.

## II. Federal Rule of Civil Procedure 23(a)

Having established the propriety of the proposed classes, plaintiffs must prove that the classes satisfy the requirements of (1) numerosity, (2) commonality, (3) typicality, and (4) adequate representation.[5] Defendants TPO apparently concede by their failure to object to the first three requirements

that these are satisfied. Furthermore, based upon its review of the record, the Court finds that the proposed classes meet each of these three requirements. There is a question, however, as to whether plaintiffs have satisfied their burden to show that they can fairly and adequately represent the interests of the proposed classes. Defendants TPO, joined by Migliorino, argue that plaintiffs have not met this burden as to the NOW Non–Member Class and thus their motion should be denied. In addition, defendants SSMP assert specific objections to each of the 23(a) requirements. The Court addresses these arguments seriatim.

### A. *Numerosity*

 Rule 23(a)(1) requires that the class be so numerous that joinder is impractical. However, the number of class members alone is not dispositive. *Rosario v. Cook County*, 101 F.R.D. 659, 661 (N.D.Ill.1983). Rather, the court must consider other relevant factors including "the nature of the relief sought, the ability of the individuals to press their own claims, the practicality of forcing relitigation of a common core of issues, and administrative difficulties involved in interpretation and joinder." *Id.* Indeed, "to require a multiplicity of suits by similarly situated small claimants would run counter to one of the prime purposes of a class action." *Swanson v. American Consumer Indus.*, 415 F.2d 1326, 1333 (7th Cir.1969). Moreover, the court may "make common sense assumptions in order to find support for numerosi-

---

4. According to defendants, the definition of the NOW Non–Member Class is problematic because it presumes a meritorious claim. *See supra* note 3; SSMP Memo. at 9. The Court finds this argument completely untenable for the following reasons. First, it is well-established that the scope of a class may be defined by reference to the defendants' conduct and satisfy the definiteness requirement implicit in Rule 23(a). *Alliance to End Repression*, 565 F.2d at 978. Second, defining a class in this manner necessarily assumes elements of the claim asserted against the defendants that have not yet been proved. However, this fact does not serve to bar certification of a class so defined. *See, e.g., id.* (certifying class in which defendants' conduct was characterized as, *inter alia*, harassment, coercion, and infiltration); *Hispanics United of Dupage County v. Village of Addison, Illinois*, 160 F.R.D. 681, 691 (N.D.Ill. 1995) (class including persons "who had been,

will be and/or continue to be, adversely affected by the segregative and discriminatory actions, policies, and practices of the Defendants" certified); *Stalling v. Califano*, 86 F.R.D. 140, 141 (N.D.Ill.1980) (class of African Americans who have been or will be denied certain employment opportunities because of their race is sufficiently definite). Thus, in light of the well-established practice of defining a class in terms of the defendant's conduct, which, at the time of class certification, is often unproved, this Court reaffirms its conclusion that the NOW Non–Member Class is sufficiently definite.

5. The Court considers plaintiffs' motion for certification in light of the modifications to the class definition made in this memorandum opinion. *See supra* Part I.B.

**360**

ty." *Evans v. United States Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir.1983). *see also In re VMS Sec. Litig.*, 136 F.R.D. 466, 473 (N.D.Ill.1991).

Plaintiffs assert that both classes amply satisfy the requirement or numerosity. The Clinic Class includes more than 300 women's health centers, located in forty-six states, the District of Columbia, and Puerto Rico. The NOW Non–Member Class includes every woman who is not a member of NOW but who has been or may be a victim of defendants unlawful conduct. It is self-evident that joinder would be impractical, and even impossible, in each of these classes. *Thillens, Inc. v. Community Currency Exchange Ass'n*, 97 F.R.D. 668, 677 (N.D.Ill.1983) ("Where the class is large, the numbers alone are dispositive of the impracticability of joinder.").

 Defendants SSMP argue, however, that both classes fail to meet the numerosity requirement because they lack definiteness.[6] With respect to the Clinic Class only, they contend that there are issues of standing because all potential class members did not suffer actual injury. The court has addressed and resolved each of these arguments in Part I in favor of plaintiffs. Accordingly, the Court finds that the numerosity requirement is met by both classes.

### B. *Commonality*

 The second requirement of Rule 23(a) is that there be questions of law or fact common to the class. In order to satisfy this requirement, the party seeking certification need only demonstrate that there is at least one common question-either of law or of fact. *Arenson v. Whitehall Convalescent and Nursing Home*, 164 F.R.D. 659, 663 (N.D.Ill. 1996); *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D.Ill.1984). Indeed, factual variations among class members' experiences will not defeat class certification so long as there is a "common nucleus of opera-

tive fact." *Rosario v. Livaditis*, 963 F.2d 1013, 1017–18 (7th Cir.1992), *cert. denied*, 506 U.S. 1051, 113 S.Ct. 972, 122 L.Ed.2d 127 (1993).

Plaintiffs assert that there are at least nine (9) common questions: (1) whether PLAN is an enterprise; (2) whether defendants have committed, threatened, or conspired to commit, extortion against the class clinics; (3) whether defendants violated 18 U.S.C. § 659 through the unlawful taking of fetal remains; (4) whether defendants have committed or conspired to commit acts of arson against the clinics; (5) whether defendants have committed, or conspired to commit acts or threats of murder or kidnaping of doctors, clinic personnel and their families; (6) whether defendants' illegal activities constitute a pattern of racketeering under 18 U.S.C. § 1962; (7) whether defendants, through their association with PLAN, have conducted the affairs of PLAN through a pattern of racketeering activity; (8) whether defendants agreed to the commission of predicate acts; and (9) whether defendants' racketeering activities have caused the class clinics and the NOW non-members to suffer injury to their businesses or property. (Pl. Memo. at 7–8).

These questions are fundamental to the RICO and state law claims asserted against the defendants and outweigh the individual questions that might arise as to specific plaintiffs. However, defendants SSMP claim that "the issue of commonality is utterly inconsistent with any adjudication of the First Amendment issues, which necessarily entail specific fact-intensive controversies." (SSMP Memo. at 13). Defendants SSMP do not present, nor has this Court found, any authority suggesting that defendants who assert First Amendment defenses are immune to suit by class action. On the other hand, courts have held that RICO cases generally "present significant common issues of fact and law because many of the elements of RICO civil actions focus on the conduct of the defendants." *McMahon Books, Inc. v. Willow Grove Assoc.*, 108 F.R.D. 32, 38

---

6. In the main, defendants SSMP argue that the class members will be difficult to identify for various reasons. However, the exact number or identity of class members need not be pleaded to establish numerosity. *Marcial v. Coronet Ins.*

*Co.*, 880 F.2d 954, 957 (7th Cir.1989); *Vergara v. Hampton*, 581 F.2d 1281, 1284 (7th Cir.1978), *cert. denied*, 441 U.S. 905, 99 S.Ct. 1993, 60 L.Ed.2d 373 (1979); *Gomez by Hernandez v. Comerford*, 833 F.Supp. 702, 706 (N.D.Ill.1993).

(E.D.Pa.1985); *see also Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 674–75 (N.D.Ill.1989). The instant action is primarily a RICO action in which First Amendment issues are raised, but do not preclude a finding of commonality. Thus, the Court resolves that, in light of the nature of the claims and allegations against defendants, there are more than enough common issues of law and fact among the plaintiffs in the instant action. Plaintiffs have thus satisfied the requirement of commonality.

### C. *Typicality*

Fed.R.Civ.P. 23(a)(3) requires that the named plaintiffs' claims be typical of the class. A plaintiff's claim is typical if it arises out of the "same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983). Plaintiffs need not present the same factual circumstances so long there is a single issue common to all class members. *Allen v. Isaac*, 99 F.R.D. 45, 54 (N.D.Ill.1983). Moreover, each plaintiff need not allege that same injury. *De La Fuente*, 713 F.2d at 232–33.

Defendants SSMP maintain that "typicality is an insuperable hurdle" in this case. (SSMP Memo. at 11). Specifically, defendants SSMP refer to the fact that only the chain of Women's Health Organization (WHO) clinics has alleged that it suffered from the alleged "fetal burials," which involved a predicate act of theft and extortion. Moreover, defendants SSMP contend that they are prepared to offer evidence to refute those allegations, thereby asserting a defense that it unique to WHO clinics. Defendants SSMP further contend that the physical configurations of and the activities that occur at each clinic site vary significantly and thus, no claim arising from defendants' conduct at one clinic is likely to be typical of any other such claim. Finally, defendants argue that these differences will impede the Court from fashioning an appropriate injunctive remedy.

Plaintiffs respond that there are no pertinent issues unique to the WHO clinics' claims; many clinics have advanced allegations against defendants relating to similar circumstances. The Court agrees that the issues relating to WHO do not defeat the typicality that exists between to the claims asserted in the complaint and those of other plaintiffs. Moreover, the existence of defenses unique to a named plaintiff does not automatically extinguish typicality, because "Rule 23 mandates the typicality of the named plaintiffs' claims-not defenses ... [I]t is only when a unique defense will consume the merits of a case that a class should not be certified." *Gaspar v. Linvatec. Corp.*, 167 F.R.D. 51, 58 (N.D.Ill.1996). Clearly, any defenses that the defendants may have against the WHO clinics do not "consume the merits of the case." Furthermore, while the plaintiff clinics necessarily vary in physical structure, there is no reason that this fact should preclude certification—the requirement is of typicality, not identity. Here the claims of the representatives arise from the same practice or course of conduct that gives rise to the claims of other class members and are based on the same legal theory. Thus, the requirement of typicality is satisfied.

### D. *Fair and Adequate Representation*

Rule 23(a)(4) requires that the named plaintiff provide fair and adequate protection for the interests of the class. Two factors are particularly important in that determination: (1) plaintiffs' attorney's qualifications, experience, and ability to conduct the litigation and (2) whether the plaintiff has interests antagonistic to those of the class. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.1992), *cert. denied*, 506 U.S. 1051, 113 S.Ct. 972, 122 L.Ed.2d 127 (1993).

Upon review of the record, the Court finds no basis upon which to question the qualifications of plaintiffs' counsel. Nor is there reason for the Court to conclude that the named plaintiffs' interests conflict with those of the NOW Non–Member Class. Rather, at issue is whether NOW is an adequate representative for that class in light of defendants arguments that (1) the proposed plaintiffs have no standing to bring suit; and (2) NOW is not a member of the class it seeks to represent.

As defendants correctly point out, in order to sue under RICO, a plaintiff must show that she has been injured in her business or property. 18 U.S.C. § 1964(c). Defendants contend that "[w]omen who are prevented from being patients of abortion facilities may claim personal injuries, but they do not face injury in their *business or property.*" (TPO Memo. at 3 (emphasis in original)). In an earlier opinion, this Court concluded that NOW has standing to sue on behalf of its members because the complaint in this action alleges that women are unable to avail themselves of a commercial relationship with the clinics. *N.O.W. v. Scheidler,* 897 F.Supp. 1047, 1068–69 (N.D.Ill.1995). The injury suffered by the members of the NOW Non–Member Class is identical to that suffered by NOW members—the inability to avail themselves of a commercial relationship with the clinics. *Id.* at 1068. Thus, the proposed class members do not lack standing to bring suit, and NOW cannot be disqualified a representative on that basis.

In the alternative, defendants attack NOW's adequacy as a class representative of the NOW Non–Member Class on the ground that NOW is not a member of that class. While it is generally a requirement that the class representative be a member of the proposed class, *e.g., Bailey v. Patterson,* 369 U.S. 31, 32–33, 82 S.Ct. 549, 550–51, 7 L.Ed.2d 512 (1962), this rule, for obvious reasons, does not typically apply to organizational representatives. *E.g., NAACP v. City of Evergreen,* 693 F.2d 1367, 1369 (11th Cir. 1982) (NAACP certified as class representative regardless of whether or not plaintiffs are NAACP members). Moreover, any suggestion that NOW non-members would necessarily have interests that are antagonistic to NOW's is clearly speculative and projects personally held views onto the plaintiff class.[7] The defendants have thus challenged unsuccessfully the adequacy of NOW's representation with respect to the NOW Non–Member Class. The Court concludes that plaintiffs have satisfied the requirements of Rule 23(a).

## III. Federal Rule of Civil Procedure 23(b)

Plaintiffs now bear the burden of demonstrating that this action meets the demands of Rule 23(b). Thus, the plaintiffs must prove that the action is such that (a) the prosecution of separate actions by or against individual members of the class would create a risk of incompatible or varying adjudications with respect to the individual member or adjudications which would necessarily implicate the rights of other members not party to the action; (b) the opposing party has acted or refused to act on grounds generally applicable to the class as a whole; or (c) the court finds that the questions of law or fact common to the members of the class as a whole predominate over any questions affecting only individual members and that a class action is the most efficacious method of adjudication. *See* Fed.R.Civ.P. 23(b).

Plaintiffs contend that the instant action satisfies the criteria of factors (b) and (c). First, plaintiffs aver that defendants have directed their unlawful behavior specifically at clinics where abortions are performed, NOW escorts, female patients, and doctors based on their perceived affiliation with abortion procedures. Second, with respect to the Clinic Class,[8] plaintiffs argue that "proof of Defendants' conspiracy to close the class clinics, their articulated scheme to achieve that goal, their common course of violent racketeering activities undertaken pursuant to that goal, and the fact of damage or threatened injury cause by those activities, will predominate over any individual issues that might arise." (Pls. Memo. at 14). All that is generally required is "an essential common factual link between all class members and the defendant for which the law provides a remedy." *Johns v. DeLeonardis,* 145 F.R.D. 480, 484–84 (N.D.Ill.1992). The

---

7. Defendants SSMP maintain that "NOW cannot represent a class of women who have opted not to be members of the organization, in the same case where it purposes to represent its member. That split would reflect a fissure running through the heart of the putative class." (SMMP Memo. at 12–13).

8. Plaintiffs seek certification of the Clinic Class under Fed. R. Civ. 23(b)(2) and 23(b)(3), and of the NOW Non–Member Class under Rule 23(b)(2) only.

allegations undergirding this case clearly meet this threshold. In addition, plaintiffs maintain that, in light of the national scope of defendants' conduct, the number of defendants against whom an individual plaintiff would need to bring a lawsuit, and the sensitive and personal matters involved, class action is the most efficacious vehicle of adjudication.[9] The Court thus finds that a class certification is appropriate of the Clinic Class and the NOW Non–Member Class.

### Conclusion

WHEREFORE, for the reasons stated in this memorandum opinion, plaintiffs' motion for class certification is granted as to the following classes:

#### I. *The Clinic Class*

The class of all women's health centers in the United States at which abortions are performed.

#### II. *The NOW Non–Member Class*

The class of women who are not NOW members and whose rights to the services of women's health centers in the United States at which abortions are performed have been or will be interfered with by defendants' unlawful activities.

Pursuant to Fed. R. Civ. Pro. 23(c)(2), plaintiffs are directed to file a proposed notice to the Clinic Class thus defined by April 18, 1997. Written objections to the proposed notice are to be filed by May 9, 1997. A hearing on objections to the proposed notice shall be held on May 19, 1997 at 9:30 a.m.

---

9. Defendants SSMP argue that, for these same reasons, class action is inappropriate in this case. In addition, defendants SSMP note that pending litigation in other circuits on similar issues militates against class certification. However, for the reasons, stated in Part III, the Court rejects these arguments and exercises its discretion in favor of certification.