**William KLEIN, Larry Bradley, Dennis McKiness, Pat Breen, Mike Hollingsworth, Carl Von Koeppen and Jim Taurisano, and all others similarly situated, Plaintiffs,**

**v.**

**DuPAGE COUNTY, Edward Lundmark, Richard Doria, Edward Burdett and R.D. Rickett, Defendants.**

**No. 85 C 3430.**

United States District Court, N.D. Illinois, E.D.

Feb. 5, 1988.

Rick Schoenfield, Ettinger & Schoenfield, Chicago Ill., and Keith Tracy, for plaintiffs.

John T. Elsner, Asst. State's Atty., James E. Ryan, DuPage Co. State's Atty., Wheaton Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

This case has traveled a slow and bumpy road and the journey has yet to fairly begin. On November 19, 1986, this court dealt with several pleading motions and then described the prior course of the litigation. *Klein v. DuPage County*, No. 85

C 3430, slip op. (N.D.Ill. Nov. 19, 1986) [Available on WESTLAW, 1986 WL 13537]. We also struck the claims for injunctive relief with leave to amend. The plaintiffs chose to proceed with damage claims only, and they now move for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs allege that routine strip-and-cavity searches of DuPage inmates before and after each court appearance and visitation violate their rights under the Fourth Amendment. Plaintiffs name as defendants prison officials Doria, Lundmark, and Burdett, and seek damages pursuant to 42 U.S.C. § 1983.

Plaintiffs initially sought certification on behalf of:

All persons who are or who have been prisoners in the DuPage County Jail since 1978, either serving sentences or awaiting trial, except those persons on work release.

(Pl.Mo. to Certify Class, ¶ 1.) In response to limitations arguments raised by defendants in their memorandum opposing certification, plaintiffs revise the putative class to include:

All persons who are or have been prisoners in the DuPage County Jail since July 9, 1980, or were prisoners in the DuPage County Jail prior to that date and who remained in prison until on or after July 9, 1983, either serving sentences or awaiting trial, except those persons on work release.

This modification does not alleviate concerns the court expressed previously, *id.* at 11, as to whether plaintiffs have alleged facts sufficient to demonstrate they have standing to sue in this matter. While plaintiffs will have to allege such facts to sustain this suit, in the interests of sound judicial administration we set aside the issue of standing and consider the motion for class certification. *See* Fed.R.Civ.P. 23(c)(1) (whether suit maintainable as a class action should be determined "[a]s soon as practicable after the commencement of an action ...").

## DISCUSSION

■ The constitutionally permissible parameters for strip-and-cavity searches of the plaintiffs here is an issue that cannot be determined in a single class action suit. In *Bell v. Wolfish*, 441 U.S. 520, 558–60, 99 S.Ct. 1861, 1884–85, 60 L.Ed.2d 447 (1979), the Supreme Court considered whether visual body cavity and strip searches violated the Fourth Amendment rights of prison inmates. The Court stated that whether such searches were reasonable, and thus constitutional, depended on "a balancing of the need for the particular search against the invasion of personal rights that the search entails." 441 U.S. at 559, 99 S.Ct. at 1884. In determining whether a search is reasonable the Court instructed other courts to "consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* In holding that the searches at issue in *Bell* were not unreasonable, the Court noted the unique security dangers presented by detention facilities and the potential for smuggling of weapons and contraband. *Id.*

Like *Bell*, the current case arises in the prison context and thus raises similar concerns with security and smuggling of weapons and contraband. Whether the searches allegedly conducted by defendants were reasonable or unconstitutional is a fact-specific inquiry that depends upon the way each plaintiff was searched and the security risks presented by each plaintiff. This case has not progressed far enough for this court to have much understanding of the actual factual circumstances. Plaintiffs allege that the searches occurred even though they had physical contact only with guards and other prisoners, and they complain both of court and visitation searches. While the visitation setting suggests that the other prisoners are fellow inmates, we do not know, for instance, whether the court appearances involved contact in a common bullpen with recent arrestees.

We may well be presented here with a situation dissimilar from that in *Jane Does v. City of Chicago*, No. 79 C 789 (N.D.Ill. Jan. 12, 1982), *aff'd in relevant part* and *remanded sub. nom., Mary Beth G. v. City of Chicago*, 723 F.2d 1263 (7th Cir. 1983), where the City of Chicago allegedly

performed strip-and-cavity searches on all women arrested for traffic violations. The court in *Jane Does* addressed the narrow question of whether the City's blanket policy of conducting these searches on all women arrestees in routine traffic stops (but on no men arrested for similar offenses) was constitutional. The court held that this policy violated the Fourth Amendment.[1] Here, where there are special institutional security concerns and where each plaintiff may have been arrested for different reasons, may have had full or no contact with those outside the prison, may pose little or great threats to prison safety, and may have been searched in a variety of ways at numerous different times, it is questionable that there is a narrow issue suitable for one constitutional determination in the context of a class action.

█ It is possible, of course, that the facts developed by plaintiffs may expose the policy to constitutional challenge in all circumstances. A class determination faces, however, an even greater difficulty. Not only *may* assessing the constitutionality of each search require separate determinations but the issue of damages *will* necessitate particularized and fact-specific inquiries. The court in *Jane Does* found that the class met the requirements for certification under Fed.R.Civ.P. 23(b)(2) but not 23(b)(3). *Mary Beth G.*, 723 F.2d at 1267 n. 2. Thus, individual trials were held to determine the issue of damages in each plaintiff's case. *Id.* Here, no claims for injunctive relief remain[2] (making certification under 23(b)(2) improper) and the court foresees the possibility of being faced with the situation presented after the search policy was held unconstitutional in *Jane Does*, where the issue of damages must be determined separately for each plaintiff. In these circumstances a class action would not be superior to other means of adjudication and certification under 23(b)(3) is inappropriate.

Assuming that the strip-and-cavity searches are unconstitutional in some or all instances, plaintiffs' claims for damages are particularly unsuited for a class action since each individual determination turns upon numerous factual considerations. Plaintiffs allege broadly that they were subject to strip-and-cavity searches, yet their potential damage awards may vary depending on whether the cavity searches were visual as in *Ward v. County of San Diego*, 791 F.2d 1329 (9th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987) and *Tinetti*, 479 F.Supp. at 488, or manual, as in *Joan W. v. City of Chicago*, 771 F.2d 1020 (7th Cir.1985), *discussed in Levka v. City of Chicago*, 748 F.2d 421, 425 (7th Cir.1984). If plaintiffs were forced to perform repeated manual searches before prison guards and were ridiculed or threatened while doing so, then such aggravating circumstances may justify high damage awards. *See id.* If plaintiffs were searched within view of members of the opposite sex, *see Mary Beth G.*, 723 F.2d at 1275, or threatened with such searches, *see Levka*, 748 F.2d at 425, then greater damage awards may be more appropriate than if the searches were viewed or performed by officials of the same sex. Some inmates may have been strip searched only, or cavity searched only, while others may have been subjected to both types of searches. The awards given to the various plaintiffs would vary according to the procedures they were forced to undergo. If inmates were brutalized or

---

**1.** The issue of the City's liability was never addressed independently from the question of whether the search policy was constitutional since a settlement agreement prohibited the search practices alleged by the plaintiffs without requiring an admission of liability from the defendants. *Mary Beth G.*, 723 F.2d at 1266.

**2.** Even if plaintiffs' claim for injunctive relief pursuant to Rule 65(a) were still alive, class certification would not be necessary to enjoin defendants' alleged practice of conducting unconstitutional strip-and-cavity searches. Injunctive relief may benefit individuals not party to an action and classwide injunctive relief may be granted when an individual action has been brought. *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1136 (11th Cir.1984). In *Tinetti v. Wittke*, 479 F.Supp. 486, 491 (E.D.Wis. 1979), *aff'd*, 620 F.2d 160 (7th Cir.1980) the court permanently enjoined defendants from strip searching traffic violators even though the plaintiff had pursued her claim as an individual and not as part of a class action. The *Tinetti* court stated "the general rule is that ... injunctive relief is appropriate when it will benefit the claimant and all others subject to the practice under attack." *Id.*

otherwise physically harmed while being searched, as alleged in *Doe v. Thomas*, 604 F.Supp. 1508, 1515 (N.D.Ill.1985), then they may recover higher damage awards than inmates who have not been similarly abused.

Damage awards will also vary depending on the emotional constitution of the person searched. *See Levka*, 748 F.2d at 425. Whether inmates suffer "shock, panic, depression, shame, rage, humiliation [or] nightmares" as a result of these searches will have a bearing on their damage awards. *See Mary Beth G.*, 723 F.2d at 1275; *Joan W.*, 771 F.2d at 1024–25. Since the extent of any psychological trauma or distress felt by inmates who were searched must be calculated into their damage awards, it will be necessary to inquire into the mental and physical health of each plaintiff before and after the searches were allegedly conducted. Such intimate, individual, and fact specific determinations do not lend themselves to consideration in the context of a class action suit.

### CONCLUSION

For the foregoing reasons, plaintiffs' motion for class certification is denied.