Reverend Frank Paul JOHNS, Michael Johns, Joseph Johns, Eda Stevens, individually and on behalf of all others similarly situated, Plaintiffs,

v.

Sergeant Anthony DeLEONARDIS, Detective Thomas Fallon, Detective Harry J. Collins, Detective James Anhalt, Detective Edward W. Mack, Detective William Keating, Detective Maria M. Soto, Detective Marry J. Fener, Detective Eldridge L. Akers, and certain unknown Chicago Police Officers, John Does I–XX, Defendants.

No. 92 C 2547.

United States District Court, N.D. Illinois, E.D.

Nov. 30, 1992.

Harvey Michael Grossman, Alan Keith Chen, Roger Baldwin Foundation of ACLU, Inc., Richard Lee Fenton, Edwin A. Rothschild, Douglas Barrett Rosner, Sonnenschein, Nath & Rosenthal, Chicago, IL, for plaintiffs.

Kelly Raymond Welsh, Diane J. Larsen, Timothy John Frenzer, Geri Lynn Yanow, City of Chicago, Law Dept., Corp. Counsel, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

This matter is before us on Plaintiffs' Motion to Maintain Class and Subclass actions pursuant to Rule 23 of the Federal Rules of Civil Procedure. For the reasons stated below, Plaintiffs' Motion is granted and this cause is certified as a class action for the class and subclass and defined in Plaintiffs' Motion.

### Facts[1]

Plaintiffs' Complaint arises from a police raid on a meeting of the Chicago Gypsy Council, an organization of elders in the Gypsy community, on the west side of Chicago on May 15, 1990. According to the Complaint, which at this stage we accept as true, this meeting was attended by the named Plaintiffs and approximately seventy other members of the local Gypsy community. Soon after the meeting began, the Defendants, Chicago Police Officers, entered the meeting brandishing weapons and ordered the attendees to "freeze." The Defendants did not identify themselves as police officers.

After verbally threatening the Plaintiffs and insulting some of them based on their ethnicity, the Defendants separated the males from the females. The Defendants then detained and searched each male attendee through pat-downs, wallet searches, and in some cases, a close inspection of clothing. At the same time, approximately twenty-five female attendees were gathered at the other end of the hall and Defendant Soto began to frisk them, including named Plaintiff Eda Stevens. The searches soon escalated into strip searches of each of the females, conducted in full view of the male Defendants and others present.[2]

1. Because, in ruling on a motion for class certification, we take the allegations of the complaint as true, the facts herein are gleaned from the Plaintiffs' complaint.

2. The extent of this strip search is unclear at

While this continued, the Defendants collected all the Plaintiffs' identification by searching wallets and purses. The search continued for two to three hours, and no one was allowed to talk, leave, obtain a drink of water or to take medication.

The Defendants never disclosed the purpose of the raid or displayed a warrant. Though two female Plaintiffs were arrested, they were released without being formally charged of any crime.

Plaintiffs filed the present suit in May 1992, alleging violation of numerous constitutional provisions, including the Fourth Amendment, the First Amendment and the equal protection guarantees of the Fourteenth Amendment. On July 31, Plaintiffs moved to certify two class actions. The first class is defined as "all persons who were subjected to any of the unlawful searches, seizures, invasions of privacy, denial of equal protection and interference with the right of association by the defendants, Chicago Police Officers, during an unlawful raid at the Park View Villa, Chicago, Illinois, on the night of May 15, 1990." (Mot. to Certify at 1). The subclass is defined as "female class members who were subjected to unlawful strip searches and denial of equal protection by defendants of the night of May 15, 1990." (*Id.*).

### Discussion

█ For the purposes of a motion to certify a class, we do not reach the merits of the claim or weigh evidence. Rather, we must take the allegations of the complaint as true. *Fry v. UAL Corp.*, 136 F.R.D. 626, 630 (N.D.Ill.1991); *Allen v. Isaac*, 99 F.R.D. 45, 49 (N.D.Ill.1983).

Rule 23 of the Federal Rules of Civil Procedure governs class certification. Fed. R.Civ.P. 23. It is well-established that a court may certify a class only when each of the four requirements of Rule 23(a) are satisfied, as well as at least one of the

requirements set out in Rule 23(b). Fed. R.Civ.P. 23; *See, e.g., Fry*, 136 F.R.D. at 630; *Patrykus v. Gomilla*, 121 F.R.D. 357, 360 (N.D.Ill.1988).

### I. The Requirements of Rule 23(a)

█ Rule 23(a) provides that representatives may sue on behalf of a class if (1) class members are so numerous that joinder of all members is impracticable; (2) questions of law or fact are common to the class; (3) claims or defenses of the representatives are typical to those of class members; and (4) the representatives will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). The party seeking class certification bears the burden of demonstrating that certification is proper. *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir.1984).

### A. Numerosity

█ Though a class must be so large that joinder of all claims is impracticable, Rule 23(a)(1) does not require immense numbers of plaintiffs. Nor does it require that the exact number of class members or their identities be alleged. *Marcial v. Coronet Ins. Co.*, 880 F.2d 954 (7th Cir.1989). However, the estimated numbers may not be purely speculative. *Id., see also Fry*, 136 F.R.D. at 630. Further, we may consider other factors such as judicial economy, geographical dispersion and the ability of the individual members to bring suit. *Tenants Ass'n for a Better Spaulding v. HUD*, 97 F.R.D. 726, 729 (N.D.Ill.1983).

█ In the present case, the Plaintiffs' estimate that approximately seventy persons were subject to the unlawful search by the Defendants, and that approximately twenty-five females were subject to the strip search. Plaintiffs are Gypsies, a minority group subject to long-standing prejudices. We feel they are unlikely to individually pursue claims against law enforcement officers. *See Patrykus*, 121 F.R.D.

---

this stage. The complaint does not allege that anyone was required to removed their clothing. However, the complaint does allege that Ms. Stevens' breast was exposed momentarily while Soto searched her blouse and brassiere and that

her panties were removed so Soto could search underneath Stevens' skirt. It also alleges that Soto unzipped the jeans of an eleven-year-old girl and searched through her undergarments.

at 361 (potential prejudice against homosexuals made filing of individual suits against law enforcement for illegal raid on gay bar unlikely). Further, we see little reason to subject the judicial system to the potential, however slim, of seventy lawsuits all arising from a common core of operative facts and parties. *See, e.g., Patrykus, id.*[3] In light of the particular facts of this case, we find sufficient numbers of plaintiffs to satisfy the numerosity requirement. Fed.R.Civ.P. 23(a)(1); *see, e.g., Swanson v. American Consumer Indus.,* 415 F.2d 1326, 1333 n. 9 (7th Cir.1969) (class of forty would have been acceptable); *Patrykus v. Gomilla,* 121 F.R.D. 357, 361 (N.D.Ill.1988) (class of 50 sufficient).

### B. Commonality

■■ Rule 23(a)(2) simply requires us to ask whether the potential class members share common issues to be adjudicated. *Fry,* 136 F.R.D. at 630. It does not require that all questions of fact or law be identical, but merely that the class claims arise out of the same legal or remedial theory. *Robinson v. Chicago,* Slip. Op., No. 83C5685, at 2, 1986 WL 2740 (N.D.Ill. Feb. 24, 1986) (Leighton, J.). Where the defendant engages in a single course of conduct that results in injury to the class as a whole, a common core of operative facts is usually present, and Rule 23(a)(2) is satisfied. *Patrykus,* 121 F.R.D. at 361; *Robinson, id.* at 2.

■■ Here, there can be no doubt that a common core of operative facts gave rise to common legal questions in the Plaintiffs' claims. All the alleged injury arose from a single occurrence, the raid and subsequent conduct of the Defendants at the Gypsy Council meeting. The question of whether the raid violated the constitutional rights of the Plaintiffs is the sole issue presented by this case. The mere fact that "individual roles and levels of participation among defendants varied or that different degrees of harassment or abuse were inflicted upon individual class members" is insufficient to

disrupt commonality. *Patrykus,* 121 F.R.D. at 361.

Defendants' assertion that each individual Plaintiff's constitutional claim is distinct and therefore inappropriate for class determination merits discussion only because it approaches misrepresentation of the case law. Cases cited by the Defendants, including *Klein v. Du Page County,* 119 F.R.D. 29 (N.D.Ill.1988), and *Mattoon v. City of Pittsfield,* 128 F.R.D. 17, 21 (D.Mass.1989), holding that there was insufficient commonality, are distinguishable on their face. In each of these cases, the alleged injury was suffered by the putative class members from an ongoing courses of conduct over long periods of time and in differing circumstances. *See Klein,* 119 F.R.D. at 31 (lack of commonality in class action over strip search policy in jail because of variety of reasons for incarceration of plaintiffs, types of searches, and extent of contact plaintiffs had with others); *Mattoon,* 128 F.R.D. at 20–21 (mass tort claim for toxic city water with individualized amounts of exposure to toxin and pre-existing conditions, and thus, causation questions, not one where "one set of operative facts establishes liability.").

In contrast, in the present case, all the alleged injury arose from a single factual occurrence, the police raid, and all the Plaintiff's claims are essentially identical. We find that sufficient commonality is present.

### C. Typicality

■■ Rule 23(a)(3) requires that the claims of the class representatives have the same essential characteristics as the claims of the class at large. *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983). Thus, a representative's claim is typical if it arises from the same event that gives rise to claims of other class members and is based on the same legal theories. *East Texas Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d

---

**3.** Though the Defendants point out that the statute of limitations has now run on the individual claims, the filing of the class action tolls the limitations period. *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983).

453 (1977); *De La Fuente*, 713 F.2d at 232 (citations omitted). That is clearly the case before us. The claims of the named representative arose from the same raid, detention and search as the claims of other class members, and share the same legal theories. The fact that two of the alleged class members have denied witnessing anything improper at the Council meeting in a telephone statement to the police is, at this stage of the proceeding, simply irrelevant.

### D. Adequate Representation

■ Rule 23(a)(4) requires that the class representatives and their attorneys will fairly and adequately represent the interests of the class. To determine if the representation is adequate, we must ask: (1) whether there exists any antagonism between the representatives and other class members; and (2) whether the named plaintiffs' counsel will adequately protect the interests of the class. *Secretary of . Labor v. Fitzsimmons*, 805 F.2d 682, 698 (7th Cir.1986); *Patrykus*, 121 F.R.D. at 362 (citation omitted). In the present case, the representatives suffered the same injury as the class members and no conflict is present. Again, the fact that the Defendants have produced telephone statements from two purported members of the class, the credibility of which we may not reach at the point, to the effect that they witnessed none of the alleged conduct at the meeting does not raise a conflict.

As to the adequacy of representation, the named Plaintiffs are represented by a national law firm and by the Roger Baldwin Foundation of the American Civil Liberties Union, an organization with an excellent reputation in this area of the law. *See Patrykus*, 121 F.R.D. at 362 (Baldwin Foundation attorneys highly regarded). Certainly, counsel is adequate to fairly represent the interests of the class members.

### II. *The Requirements of Rule 23(b)*

Once the requirements of 23(a) are met, a putative class must also meet at least one of the requirements of Rule 23(b). Under that section, the court must find that (1) the prosecution of separate actions by indi-vidual class members would create inconsistent adjudications or impair the ability of other members to protect their interests; or (2) the opposing party has acted or refused to act on grounds generally applicable to the class; or (3) common questions of law or fact predominate. Fed.R.Civ.P. 23(b).

This case appears to fall within the bounds of 23(b)(2), there is no real dispute that this complaint arose from a single and common core of facts, and 23(b)(3).

Defendants correctly point out, however, that certification under 23(b)(2) is inappropriate where the relief requested relates exclusively or predominately to money damages. *Halverson v. Convenient Food Mart, Inc.*, 69 F.R.D. 331, 334 (N.D.Ill. 1974). Here, Plaintiffs seek declaratory relief that their constitutional rights were violated as well as monetary damages. We are also mindful that certification under 23(b)(2) is particularly appropriate in class actions brought to vindicate civil rights, *Patrykus*, 121 F.R.D. at 363 (citation omitted), and that an action that seeks money damages as well as declaratory and injunctive relief may be certified under 23(b)(2). *Id.*

However, in the present case, no prospective relief is sought. The class and subclass prayers for relief seek only a declaration that the rights of the members were violated and monetary relief. Though the declaratory relief they seek is not insignificant, *see e.g.*, *Dickinson v. Indiana State Election Bd.*, 933 F.2d 497, 503 (7th Cir. 1991) (declaration would provide "important statement of plaintiffs' rights"), the Plaintiffs appear to be primarily seeking money damages.

■ However, we need not decide whether claims for monetary relief predominate in the present case, so as to preclude certification under 23(b)(3) because we find that the requirements of 23(b)(3) are met. Rule 23(b)(2) requires that common questions of law or fact predominate. Fed. R.Civ.P. 23(b)(3). This section merely requires that the class claims have a dominant, central focus. Satisfaction of this criterion normally turns on the answer to

one basic question: is there an essential common factual link between all class members and the defendant for which the law provides a remedy? *Halverson v. Convenient Food Mart, Inc.*, 69 F.R.D. 331 (N.D.Ill.1974). Clearly, such a common factual link exists here.

Defendants assertions that common questions do not predominate in this lawsuit is unavailing. Though the members of the subclass may have differing damages due to the varying injury done to them during the strip search, the extent of damages is not an issue at this stage of the proceeding. *Grossman v. Waste Management, Inc.*, 100 F.R.D. 781, 784 (N.D.Ill. 1984) (whether and to what degree individual plaintiffs have suffered damages not an issue at class certification stage, but rather an issue on the merits).

Further, we find that a class action is superior to other available methods for the fair and efficient adjudication of the controversy before us. Fed.R.Civ.P. 23(b)(3). As we have stated, it is unlikely that the individual plaintiffs will file lawsuits. Where, as here, the injuries arise from a core of common operative facts concerning a single occurrence, we see no benefit in requiring duplicative lawsuits. *See Patrykus*, 121 F.R.D. at 363.

### Conclusion

Plaintiffs' motion to maintain class and subclass actions is granted. The class and subclass, as defined in Plaintiffs' Class Complaint, are hereby certified under Rule 23(b)(3). Fed.R.Civ.P. 23(b)(3), 23(c)(4)(B).