**Alta L.P. HURD, and Clifford O. Rawley, Individually and as Representative Plaintiffs for a Class of those similarly situated, Plaintiffs,**

v.

**MONSANTO COMPANY, a Delaware Corporation, and Westinghouse Electric Corporation, a Pennsylvania Corporation, Defendants.**

No. IP 94–983 C B/S.

United States District Court, S.D. Indiana, Indianapolis Division.

Sept. 14, 1995.

David S. McCrea, McCrea & McCrea, Bloomington IN, Michael Warshauer, Burge & Wettermark, Atlanta GA, Michael Gallagher, Fisher Gallagher & Lewis, Houston TX, for Hurd, Alta L.P., Clifford O. Rawley.

Michael R. Fruehwald, Barnes & Thornburg, Indianapolis IN, for Monsanto Company.

Joseph B. Carney, Baker & Daniels, Indianapolis IN, Arvin Maskin, Weil Gotshal & Manges, New York City, for Westinghouse Electric Corp.

### ENTRY

BARKER, Chief Judge.

This matter is before the Court on Plaintiffs' motion for certification of a class action pursuant to Federal Rule of Civil Procedure 23. For the reasons set forth below, the motion is denied.

## I. FACTUAL BACKGROUND.

This is an action brought by Alta Hurd and Clifford Rawley, individually and on behalf of a class of similarly situated individuals. Both Hurd and Rawley are long-time employees of Westinghouse Electric Corporation ("Westinghouse"), having worked at Westinghouse's Bloomington, Indiana, manufacturing facility since August, 1965, and July, 1967, respectively.

Westinghouse owned and operated the Bloomington facility from 1957 through January 1, 1990. During that period, the facility manufactured, among other things, electrical power capacitors, lightning arrestors, fuse cutouts and reclosers. Between 1958 and 1977, Westinghouse used a polychlorinated biphenyl ("PCBs") dielectric fluid called Inerteen as a component part of its electrical power capacitors.

PCBs are made through a process whereby chlorine is passed through heated liquid biphenyl in the presence of iron filings. In response to several studies documenting the potential environmental and human health risks attendant to their use, the federal government banned the manufacture and use of PCBs in the mid 1970's. The sole manufacturer of PCBs in the United States during that time was the other defendant in this lawsuit, Monsanto Company ("Monsanto").

In this suit, Hurd and Rawley claim that they were exposed to PCB fluids and fumes from the time they began working for Westinghouse until 1977, the year Westinghouse discontinued their use. Hurd claims to suffer joint pain, skin rashes, high cholesterol, nail fungus, loss of concentration, numbness, sinus and colon problems and endometriosis, all of which she believes were caused by exposure to PCBs. She is also fearful that her health will worsen over time as a result of that exposure. Similarly, Rawley maintains that his joint pain, headaches, sinus and stomach problems are the result of PCBs exposure, and he fears that he may ultimately develop more serious health problems such as cancer.

On June 23, 1994, plaintiffs filed suit on their own behalf, and on behalf of "the more than 3,500 workers exposed to [PCBs] and related toxic compounds at [Westinghouse's] Bloomington, Indiana plant from · 1958 to 1977 when PCB capacitors were manufactured." (Second Amended Complaint, ¶ 7). Essentially, plaintiffs claim that the defendants knew that PCBs were dangerous, yet intentionally withheld information concerning the hazards associated with exposure to PCBs. Against Westinghouse, they allege

fraud, conversion, breach of contract and breach of the collective bargaining agreement, battery, intentional harm and punitive damages. Similarly, Monsanto is being sued for emotional distress, fraud, battery, strict liability and punitive damages. Both plaintiffs seek compensatory damages and costs associated with future medical monitoring.

## II. DISCUSSION.

■ On November 21, 1994, each defendant moved to dismiss the Second Amended Complaint. In an order dated February 6, 1995, this Court stated its intention to address the class certification issue before considering the motions to dismiss. (Court's Order of Feb. 6). Indeed, because Rule 23(c) of the Federal Rules of Civil Procedure requires a class certification determination "[a]s soon as practicable after the commencement of [such] an action," Fed.R.Civ.P. 23(c), district courts should determine whether a case should proceed as a representative action prior to consideration of motions to dismiss and "without regard to the virtues of the plaintiffs' legal theory." *Koch v. Stanard*, 962 F.2d 605, 607 (7th Cir.1992).

■ Plaintiffs seek to represent a class composed of "the more than 3,500 workers exposed to [PCBs] and related toxic compounds at [Westinghouse's] Bloomington, Indiana plant from 1958 to 1977 when PCB capacitors were manufactured." (Second Amended Complaint, ¶ 7). The party seeking class certification bears the burden of establishing that certification is proper. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372–73, 72 L.Ed.2d 740 (1982).

■ Rule 23 requires a two-step analysis to determine whether class certification is appropriate. First, the action must satisfy all four requirements of Rule 23(a): the plaintiff must therefore meet the prerequisites of numerosity, commonality, typicality, and adequacy of representation. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir.1993). Because each element is a prerequisite to certification, failure to meet

any one of them precludes certification as a class. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir.1993). Second, the action must satisfy one of the conditions of Rule 23(b).

### A. Rule 23(a) Requirements

■ Rule 23's first requirement is that the class be "so numerous that joinder of all members is impracticable." Fed. R.Civ.P. 23(a)(1). The proposed class must be so numerous that joinder of all members is impracticable. Although plaintiffs are not required to specify the exact number of persons in the class, they cannot rely on conclusory allegations or speculation as to the size of the class. *Marcial v. Coronet Insurance Co.*, 880 F.2d 954, 957 (7th Cir. 1989).

■ Here, Westinghouse argues that the numerosity requirement is not met because most, if not all, of the claims of the putative class fall within the exclusivity provisions of the Indiana Occupational Disease Act and the Worker's Compensation Act, or because they are time-barred. As a result, Westinghouse maintains that plaintiffs cannot show "that even one class member may have [a] legitimate claim." (Westinghouse's Brief in Opposition, at 15–16) (internal marks omitted). That argument, however, requires the Court to address the merits of plaintiffs' suit in contradiction to this Circuit's caselaw. *See Koch*, 962 F.2d at 607 ("The court must decide promptly whether the case should proceed as a representative action, without regard to the virtues of the plaintiffs' legal theory"). Further, we find that the approximately 3500 past and present Westinghouse workers who worked in the Bloomington facility between 1957 and 1977 sufficiently numerous to make joinder impracticable, thus satisfying the numerosity requirement.

■ Rule 23(a) next requires that the claims of the representative parties be typical of the claims of the class. Fed.R.Civ.P. 23(a)(3).[1] The typicality inquiry directs the court "to focus on whether the named representatives' claims have the essential characteristics as the claims of the class at large."

---

1. Because neither defendant disputes that the commonality element of Rule 23(a)(2) has been satisfied, the Court need not address that element here.

*De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983). While factual differences between the claims do not alone preclude certification, the representative's claim must arise from "the same event or practice or course of conduct that gives rise to the claims of the other class members and ... [be] based on the same legal theory." *De La Fuente,* 713 F.2d at 232; *see also Retired Chicago Police Ass'n,* 7 F.3d at 597.

■ Here, plaintiffs have advanced several theories of liability against Monsanto and Westinghouse. The Court concedes that some aspects of these various claims are common to the class at large. For example, whether and to what extent the defendants knew that exposure to PCBs could be harmful to human health is an issue potentially arising from a practice common to all putative class members.[2]

In products liability and toxic tort suits involving personal injuries, however, uncommon issues entitled to individual determinations dominate. Undeniably, no single happening or accident occurred at Westinghouse's Bloomington facility causing identical harms to each putative class member. Rather, each plaintiff was exposed to different levels of PCBs for different amounts of time in different areas of the plant. Each putative class member's susceptibility to injury from PCBs will vary. Thus, no single proximate cause inquiry applies equally to each putative class member; no one set of operative facts establishes liability. The Court therefore finds that the typicality requirement has not been satisfied. *See, e.g.,* 3 H. Newberg, NEWBERG ON CLASS ACTIONS, § 17.11 (1992) ("The claims of the class representative [in a toxic tort suit involving personal injuries] are, by definition, not typical of those of class members in such cases with respect to individual issues of proximate cause and unique unliquidated damages, so the representative cannot adequately represent the class in litigating these individual issues"); *Commonwealth of Puerto Rico v. M/V Emily S,* 158 F.R.D. 9, 14 (D.P.R.1994) ("any injuries would be dependent upon the nu-

merous variables present, including such matters as personal susceptibility to harm, and degree, nature and duration of exposure. No such claim can truly be 'typical' ").

## B. Rule 23(b) Requirements

Having found the requirements of Rule 23(a) unsatisfied, the Court need not analyze the second part of the two-step class analysis. Nevertheless, in the interest of thoroughness, the Court now turns to the 23(b) analysis.

■ Plaintiffs first seek certification under Rule 23(b)(1)(A), which provides that a suit may be maintained as a class action if the prosecution of separate actions by individual members of the class would create a risk of establishing incompatible standards of conduct for the party opposing the class. According to plaintiffs, the risk of establishing incompatible standards of conduct is real because "Plaintiffs seek the identical recovery under identical causes of action.... Separate adjudications may result in inconsistent results on each claim." (Plaintiffs' Reply Memorandum, at p. 11). However, that some plaintiffs may ultimately be successful against a defendant while others may not is simply not a ground for invoking Rule 23(b)(1)(A). *In re Dennis Greenman Securities Litigation,* 829 F.2d 1539, 1545 (11th Cir.1987); Newberg, *supra,* at § 17.14 ("the generally accepted view [is] that payment by the defendant to some plaintiffs but not to others is not enough to demonstrate inconsistent conduct or incompatible standards. The fact that there will be some winners and some losers does not meet the test"). Thus, Rule 23(b)(1)(A) is not satisfied.

■ Plaintiffs next attempt certification pursuant to Rule 23(b)(3), which requires satisfaction of two related requirements: predominance of common over individual issues and superiority of class proceedings to other methods of resolution. As the express language of the Rule indicates, for a class to be certified under this provision, common issues must predominate over individual is-

---

**2.** The terms of the collective bargaining agreement might be another common issue, but only if the relevant portions of that agreement remained the same from 1958 to 1977.

sues. In other words, the Court must ascertain "the existence of a group which is more bound together by a mutual interest in the settlement of common questions than it is divided by the individual members' interest in the matters peculiar to them." *Elliott v. ITT Corp.,* 150 F.R.D. 569, 577 (N.D.Ill. 1992).

▉▉▉▉ Here, plaintiff has not shown that common issues will predominate over individual issues. Unlike airplane crash or hotel disaster cases, which usually involve a single set of operative facts used to establish liability, *see A.H. Robins Co., Inc.,* 880 F.2d 709, 725 (4th Cir.1989), this case involves continuing exposure over as many as twenty years. Undeniably, some class members have been exposed to PCBs only for a few months and at low levels, while others, for decades and at high levels. Some class members may never experience injury symptoms or will experience long latency periods because of the specific circumstances surrounding their exposure and medical histories, while others may experience almost immediate and perceptible harm. In short, causation in a personal injury case predicated on exposure to PCBs "will necessarily be different for every person in the proposed class, based on each person's length of exposure to [PCBs], notice, pre-existing medical conditions and other factors." *M/V Emily S,* 158 F.R.D. at 15 (quoting *Mattoon v. City of Pittsfield,* 128 F.R.D. 17, 21 (D.Mass.1989)); *accord Brown v. Southeastern Pennsylvania Transportation Authority ("SEPTA"),* 1987 WL 9273, at *10 (E.D.Pa. April 9, 1987) (court denies certification of class exposed to PCBs due to predominance of individual causation issues).[3]

▉▉▉ Nor does plaintiffs' assertion that issues concerning "the toxicity of PCB's" are common to all claimants change our reasoning. (Plaintiffs' Reply Memorandum, at p. 13). Whether a substance poses a health risk in the abstract is simply not grounds for class certification under Rule 23(b)(3). As the Second Circuit stated in the Agent Orange litigation:

> The relevant question ... is not whether Agent Orange has the capacity to cause harm, the generic causation issue, but whether it *did* cause harm and to whom. That determination is highly individualistic, and depends upon the characteristics of individual plaintiffs (*e.g.,* state of health, lifestyle) and the nature of their exposure to Agent Orange.

*In re Agent Orange Product Liability Litigation,* 818 F.2d 145, 165 (2d Cir.1987). Thus, even if a jury could make a class-wide finding of fact regarding the general health risks posed by PCBs, resolution of liability issues would still require an individual inquiry into the circumstances involving each class member's exposure and susceptibility.

▉▉▉ Moreover, defendants have asserted several defenses that will further infuse the proceedings with individual issues. For example, the claims of some putative class members may be barred by the statute of limitations. As plaintiffs note, Indiana courts follow the so-called discovery rule, meaning that the limitations period begins to run from the date that the plaintiff knows of or should have discovered that she suffered an injury. *See Barnes v. A.H. Robins Co., Inc.,* 476 N.E.2d 84, 87–88 (Ind.1985). Individual hearings would thus be necessary to discover when each class member first learned that she had been injured by exposure to PCBs. The Court therefore finds that class certification of the entire action pursuant to Rule 23(b)(3) inappropriate at this time.[4]

---

**3.** Plaintiffs' fraud claims against both defendants are similarly inappropriate for class treatment. One necessary element in a fraud claim is reliance. Each class member will thus have to prove what acts or omissions of the defendants he actually relied upon and how that reliance cause his injury. *Perta v. Comprehensive Accounting Corp.,* 1985 WL 1900, *3 (N.D.Ill. July 3, 1985) ("the necessity of proving reliance by each class member upon the alleged fraudulent misrepresentations causes individual issues to predominate").

**4.** Nor do we see how judicial economy or administration would result from certification of the entire class as proposed by plaintiffs. Causation would remain a matter of separate and individual proof in the personal injury and strict liability claims, and following its determination of liability the court would likely be faced with highly individualized damage issues.

### C. Certification of Subclasses

■ When an action includes multiple claims, some of which might qualify as a certifiable class claim, the "court may separate such claims from other claims in the action and certify them under the provisions of" Rule 23(c)(4). *A.H. Robins Co.,* 880 F.2d at 728. Before these sub-issues or subclasses may be certified, however, the usual class action requirements of Rule 23(a) and (b) must be satisfied. *Retired Chicago Police Ass'n,* 7 F.3d at 599.

■ In their reply brief, plaintiffs recite a litany of specific issues and individual claims which they maintain are suitable for certification, including the general toxicity of PCBs, defendant's knowledge of that toxicity, the terms of the collective bargaining agreement, "all issues of basic liability," and the entire breach of contract and medical monitoring claims. (Plaintiffs' Reply Memorandum, at 16–17). The Court has already determined that many of these issues are unsuitable for class treatment in its discussion *supra.* For example, the generic question of whether PCBs are toxic is really a particular determination of whether the PCBs did in fact cause harm and to whom. Similarly, "all issues of basic liability" in plaintiffs' personal injury counts are inextricably entangled with individual issues of proximate cause. Indeed, even plaintiffs' medical monitoring claims will require individualized proof as to the nature and extent of each class member's exposure, the seriousness of their present injury and the likelihood of future harm in light of each's personal circumstances. *See SEPTA,* 1987 WL 9273, at *12; *Kuhn v. Skyline Corp.,* 1984 WL 62775, *6 (M.D.Pa. Aug. 3, 1984); *see also In re Paoli R.R. Yard PCB Litigation,* 35 F.3d 717, 788 (3d Cir. 1994) (quoting *Hansen v. Mountain Fuel Supply Co.,* 858 P.2d 970, 980 (Utah 1993)) (plaintiffs must "prove that by reason of the exposure to the toxic substance ... a reasonable physician would prescribe for her or him a monitoring regime different than the one which would have been prescribed in the absence of that particular exposure").

As to the remaining issues—namely, the defendants' knowledge of the toxicity of PCBs and the breach of contract claims—the Court is unconvinced that certification of these ancillary issues would provide judicial economy and case administration benefits superior to the benefits accorded by more traditional methods, such as a procedure involving consolidated individual claims, coordinated discovery and *stare decisis.* The Court is mindful, however, of the possibility that our view of the certification question may change as the factual record evolves. We therefore leave open the possibility that future circumstances may dictate a difference approach. As the record now stands, however, we find that the class action device to be inappropriate to the resolution of this dispute.

### III. CONCLUSION.

For the reasons set forth above, the Court DENIES plaintiffs' motion for class certification.

It is so ORDERED.