**HUBLER CHEVROLET, INC., Dave Stetler Chevrolet–Cadillac, Inc., Martin Chevrolet Sales, Inc., Country Chevrolet Oldsmobile Geo, Inc., Bob Wiese Oldsmobile, Inc., Kirk Chevrolet Pontiac, Inc., Mahoney Chevrolet, Inc., Ray Skillman Oldsmobile & Gmc Truck, Inc., Individually, and as Class Representatives of all those similarly situated, Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, A Delaware Corporation, Defendant.**

No. IP99–0485–C–B/S.

United States District Court, S.D. Indiana, Indianapolis Division.

March 30, 2000.

Ronald Smith, Stewart & Irwin, Indianapolis, IN, for Plaintiffs.

Alan S. Brown Locke Reynolds Boyd & Weisell, Indianapolis, IN, Michael H. Carpenter, Zeiger & Carpenter, Columbus, OH, for Defendants.

### ENTRY GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

BARKER, Chief Judge.

Plaintiffs, a group of Indiana automobile dealers who sell vehicles manufactured by General Motors (GM), a Delaware corporation, brought this action against GM on behalf of all Indiana dealers alleging that GM's marketing scheme violates the Indiana Deceptive Franchise Practices Act (IDFPA, Ind.Code 23–2–2.7–2(1)) and constitutes criminal conversion and unjust enrichment.[1] Plaintiffs claim that GM unlawfully altered its marketing program, under which it collects from dealers an extra one (1) percent of the Manufacturer's Suggested Retail Price (MSRP) of new cars sold. Formerly, the dealers authorized GM's collection of the one percent charge because GM redistributed the money to regional dealer marketing groups (DMGs) for use in local advertising campaigns. In April of 1999, GM began to retain the monies previously earmarked for local marketing efforts, announcing that it would now spend this money on national advertising. Plaintiffs' Complaint seeks to enjoin GM from assessing the alleged marketing charge against Indiana GM dealers, a declaration that the marketing funds in question belong to the dealers, disgorgement of illegal

1. Jurisdiction is proper under 28 U.S.C. § 1332.

2. We note that GM's submission of additional authority—a case to which none of the plaintiffs in this case was a party (the *Anthony Pontiac* case in Chicago)—appears to be an attempt to have us evaluate the merits of Plaintiffs' claims, which would be inappropriate and irrelevant in deciding whether the proposed class should be certified. While we disregard GM's submission as it pertains to Plaintiffs' class certification motion, we DENY Plaintiffs' Motion to Strike GM's Supplemental Citation of Authority because GM apparently submitted this material in connection with a pending discovery dispute that has not yet been resolved.

benefits that GM has derived from its marketing program since April of 1999, treble damages for conversion, and attorney fees under the IDFPA and Ind.Code 9–23–6–9. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs moved for certification of a class defined as all GM dealers located in Indiana. Because the parties more than sufficiently communicated their arguments in support of and in opposition to class certification in their briefs, we have determined that a hearing regarding Plaintiffs' motion is unnecessary at this time and DENY GM's Request for Oral Argument. In addition, until Plaintiffs respond to GM's allegations that they did not follow the procedures set forth in the Protective Order for resolving disputes regarding confidential material and can show us that they have done so, Plaintiffs' Motion to Unseal Defendant's Brief in Opposition to Class Certification is DENIED.[2]

### Discussion

#### 1. Rule 23(a)

■ As a preliminary issue, we note that courts do not examine the merits of a dispute in considering whether to certify a class. *Wilborn v. Dun & Bradstreet Corp.*, 180 F.R.D. 347 (N.D.Ill.1998). Federal Rule of Civil Procedure 23 establishes a two-step procedure for determining whether a class can be certified. *See Hurd v. Monsanto Co.*, 164 F.R.D. 234, 238 (S.D.Ind.1995); 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* 2d § 1753, at 44 (1986). The first step is to satisfy the prerequisites of Rule 23(a), which provides that:

On March 28, GM filed (without seeking leave of the Court) a Surreply in Further Opposition to Plaintiffs' Motion for Class Certification. We decline to consider the arguments therein, because our Local Rules make no provision for the submission of such additional materials, particularly at this late date, more than three and a half months after Plaintiffs filed their reply. See S.D. Ind. L.R. 7.1(a) ( ... [T]he adverse party shall have fifteen (15) days after service [of a motion] in which to serve and file a response thereto and the moving party shall have seven (7) days after service of such response in which to serve and reply thereto.... Failure to file an answer brief or reply brief within the time prescribed may subject the motion to summary ruling.)

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The party seeking class certification bears the burden of proving that these prerequisites have been met and that class certification is appropriate. *See General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir. 1993); *Hurd,* 164 F.R.D. at 238. Because each element is a prerequisite to certification, failure to meet any one of them precludes certification as a class. *See Retired Chicago Police Ass'n,* 7 F.3d at 596.

### a. Numerosity

■ As discussed above, Plaintiffs must show that the putative class is so numerous that "joinder of all [class] members is *impracticable.*" Fed. R.Civ.P. 23(a)(1) (emphasis added). While there is no magic number held to satisfy this requirement, classes of forty or more members have generally been found to be sufficiently numerous. *See Swanson v. American Consumer Indus.,* 415 F.2d 1326, 1333 n. 9 (7th Cir.1969); Charles Alan Wright, Arthur R. Miller & Mary Kay Kane § 1762, at 159. By GM's own account, there are 258 current GM dealers in the state of Indiana. General Motors argues that joinder is not impracticable because all proposed class members' identities and addresses are readily ascertainable. The authority it cites in support of its position represents a minority view; we rely instead on the established principle that "a showing of strong litigational hardship or inconvenience should be sufficient" to establish numerosity. *See* Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 3.04 (3d ed.1992). In light of the circumstances of this action, including the geographic dispersion of the dealers and the difficulties of administering a case involving over 200 plaintiffs, we believe that joinder is impracticable and that Plaintiffs have satisfied the numerosity requirement.

### b. Commonality and Typicality

■ Rule 23(a)(2) requires that "there are questions of law or fact common to the class," and Rule 23(a)(3) requires that the plaintiff's claim be typical of those of the class. Fed. R.Civ.P. 23(a)(2), (3). These two requirements are "closely related." *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992). Commonality does not require that all questions of fact or law be identical. *See Johns v. DeLeonardis,* 145 F.R.D. 480, 483 (N.D.Ill. 1992). Factual variation among class grievances does not defeat a finding of commonality. *See Rosario,* 963 F.2d at 1017. Rather, this requirement is satisfied as long as "the class claims arise out of the same legal or remedial theory," *Johns,* 145 F.R.D. at 483. It is enough to satisfy commonality that there be a "common question . . . at the heart of the case. . . ." *Rosario,* 963 F.2d at 1018.

■ GM's argument that Plaintiffs' claims are based on a variety of differing oral and written communications cannot defeat commonality and typicality, though it may be relevant in determining whether common issues predominate. Plaintiffs readily fulfill the element of commonality in this case. All members of the proposed class share an identical legal claim: that the one percent charge collected by GM, formerly distributed to the DMGs, belongs to them. The legality in Indiana of General Motors' marketing practices, namely its retention of the assessment against all new cars sold by its dealers, forms the common basis of the suit.

Similarly, typicality is shown if the named plaintiff's claim "arises from the same . . . practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983). Plaintiffs have alleged that General Motors requires dealers to pay a marketing fee of one percent of the sales price for all new cars sold, without regard to the brand of GM

vehicles purchased by the dealer, the dealer's marketing strategy, the size or geographic location of the dealership, or the local economic conditions in the dealership's area. This is easily characterized as a "single practice or course of conduct." *De La Fuente,* 713 F.2d at 232. As we have previously noted, all of the class members' claims are based on the same legal theory regarding the marketing charge and Rule 23(a)(3) is satisfied.

### c. Adequacy of Representation

■ Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. This element reflects concerns about the competency of class counsel and potential conflicts of interest: "(a) the plaintiffs' attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiffs must not have interests antagonistic to those of the class." *Rosario,* 963 F.2d at 1018; *see General Tel. Co. v. Falcon,* 457 U.S. at 157, n. 13, 102 S.Ct. 2364. Courts generally presume competency of class counsel at the outset of the litigation "in the absence of specific proof to the contrary by the defendant." *See* Newberg & Conte, *Newberg on Class Actions* at § 3.42. General Motors provides no evidence that Plaintiffs' counsel is inadequate and we believe the briefs filed in this Court by class counsel support a presumption of competency. General Motor's allegation that a conflict of interest arises from counsel's representation of a local association of automobile dealers lacks merit as GM does not demonstrate that an actual conflict exists, nor does it cogently explain how the alleged conflict might harm class interests.

■ Similarly unavailing are GM's suggestions that the named plaintiffs are not adequate representatives of the class. General Motors presents deposition testimony excerpts of proposed class representatives to establish that the named plaintiffs have differing goals in the litigation. While the named plaintiffs may prefer different marketing strategies, it is clear that they share a common view that GM has unlawfully appropriated the one percent marketing charge

at issue in this case for use in national advertising efforts. General Motors further alleges that some of the named plaintiffs provided "no input" in drafting the Complaint and are not willing to personally finance this litigation in its entirety. We think GM's arguments overstate the responsibilities of class representatives; the proposed representatives are not lawyers expected to understand intimately the legal nuances of the case. They may not comprehend perfectly their legal obligations as class representatives, but their testimony reveals genuine interest in the outcome of this litigation: one dealer expressed willingness to bear the entire costs of the action, while the others said they would pay their fair share. The fact that these businessmen made time to appear for scheduled depositions (one individual cut short a trip to attend his) also indicates commitment to this lawsuit and an understanding of the importance of their role. Furthermore, the plaintiffs' willingness to represent the class against GM, potentially damaging their franchise relationships with GM, demonstrates keen desire to pursue this cause. We disagree with GM's contention that these putative class representatives have "so little involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys" Def.'s Mem. Opp. Pls.' Mot. Class Cert. at 34 (citations omitted). They appear willing and able to preserve class interests against any adverse concerns.

Despite GM's speculative-but-thorough description of the ways in which the interests of Indiana GM dealers could vary, we reject GM's argument that these differences constitute antagonistic interests that should prevent class certification. The interests of the class members need not be identical; the only conflicts relevant to our inquiry are those that relate materially to Plaintiffs' claims. In addition, as will be addressed in our discussion of (b)(3) certification, if members of the putative class believe that the named plaintiffs do not adequately represent their interests, they may choose to opt out of the suit. We find that Plaintiffs have met the requirement of adequacy of representation. Plaintiffs have established that they

meet all of Rule 23(a)'s prerequisites; thus, we turn to consideration of 23(b).

### 2. *Rule 23(b)*

It is not enough that the threshold requirements of Rule 23(a) are met; the action must also be maintainable under one of Rule 23(b)'s subparts. *See* Fed. R.Civ.P. 23(b); *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 759–760 (7th Cir.2000); *Hurd*, 164 F.R.D. at 238. Plaintiffs seek certification under Rule 23(b)(1), 23(b)(2) and 23(b)(3).

### a. *Rule 23(b)(1)*

■ Class certification under Rule 23(b)(1) is typically appropriate in cases where there exists either a common fund that may limit recovery to individual plaintiffs or a risk of establishing inconsistent standards of conduct for the defendant. *See Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 897 (7th Cir.1999) (commenting that "domain of Rule 23(b)(1)" is "limited fund that must be distributed ratably," citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999)). We discern no allegation of a limited fund that would demonstrate why this type of certification should apply in the instant case. Plaintiffs note that "the prosecution of separate actions will create the risk of varying adjudications with respect to individual dealers" that could "be dispositive of the interests of other GM dealers in the State of Indiana who are not parties to this action or will substantially impair or impede their ability to protect their interests." Pls.' Mem. Supp. Mot. Class Cert. at 17. However, "that some plaintiffs may ultimately be successful against a defendant while others may not is simply not a ground for invoking Rule 23(b)(1)(A)." *Hurd*, 164 F.R.D. at 239 (citations omitted).

### b. *Rule 23(b)(2)*

■ Under Rule 23(b)(2), a class may be certified when "the party opposing the class has acted or refused to act on grounds generally applicable to the class," and the representatives are seeking "final injunctive relief or corresponding declaratory relief." Fed. R.Civ.P. 23(b)(2); *Doe v. Guardian Life Ins. Co. of America*, 145 F.R.D. 466, 477 (N.D.Ill.

1992); Charles Alan Wright, Arthur R. Miller & Mary Kay Kane § 1775, at 477. The primary limitation imposed by this subsection is that injunctive or declaratory relief must predominate as the remedy being sought on behalf of the class. *See Clay v. American Tobacco Co.*, 188 F.R.D. 483, 494 (S.D.Ill.1999); *Doe*, 145 F.R.D. at 477; Wright, Miller & Kane § 1775, at 444–48. The subsection is not fulfilled where the plaintiffs are seeking predominantly money damages. *See Clay*, 188 F.R.D. at 494; *Doe*, 145 F.R.D. at 477.

Plaintiffs have alleged conduct by General Motors clearly applicable to all members of the class: illegal conversion of one percent of the price of new vehicles, an amount formerly contributed to local advertising funds, for use in its own national marketing efforts. Thus, any obstacle to Plaintiffs' attempt to certify this class action under Rule 23(b)(2) would come from the type of relief they are seeking, that is, whether it is a form of final injunctive or corresponding declaratory relief. To determine whether the relief sought is primarily equitable or money damages, "the plaintiffs' specific request for relief must be closely scrutinized and consideration must be given to whether the 'crux of the action is for money damages.'" *Clay*, 188 F.R.D. at 494 (quoting *Dhamer v. Bristol–Myers Squibb Co.*, 183 F.R.D. 520, 528 (N.D.Ill. 1998)).

Deciding whether Plaintiffs' case fits the (b)(2) paradigm presents a close issue because Plaintiffs want to prevent future economic harm and would be entitled to equitable recovery of the amounts paid under an unjust enrichment theory, but they also pursue treble damages on the conversion count and an award of attorney fees as provided for by Indiana statute. In one sense Plaintiffs seek a declaration that the one percent is their money, and relief would seem to flow directly from that proposition. Declaratory relief only "correspond[s]" to final injunctive relief when "as a practical purpose it affords injunctive relief or serves as a basis for later injunctive relief." 1966 Advisory Committee Note to Rule 23, 28 U.S.C.A. Rule 23 at 298. Declaratory relief is not to be used simply to "lay the basis for a later damage award."

*Sarafin v. Sears, Roebuck and Co.,* 446 F.Supp. 611, 615 (N.D.Ill.1978); Wright, Miller & Kane § 1775, at 463. "The use of a declaratory judgment in a class action where the real goal is a damage award undermines the purpose of Rule 23(b)(2)." *Sarafin,* 446 F.Supp. at 615. We do not think that Plaintiffs' prayer for declaratory relief is presented only to lay the basis for an award of treble damages and attorneys fees, but we cannot ignore the large amount of money involved in the potential recovery to class members.

In *Jefferson v. Ingersoll International,* Judge Easterbrook offered guidance to district courts deciding between 23(b)(2) and (b)(3) class certification. 195 F.3d 894, 898 (7th Cir.1999). Questioning whether Rule 23(b)(2) may ever be used to certify a no-notice, no-opt-out class when compensatory or punitive damages are at issue, he pointed out that Rule 23

> does not say that the class must be certified under the first matching subsection. A court should endeavor to select the most appropriate one in the list. When substantial damages have been sought, the most appropriate approach is that of Rule 23(b)(3), because it allows notice and an opportunity to opt out.

*Jefferson,* 195 F.3d at 898. Plaintiffs' argument (regarding (b)(1) certification) recognizing that a decision that could "be dispositive of the interests of other GM dealers in the State of Indiana" who did not participate in that action might "substantially impair or impede their ability to protect their interests" reflects the disadvantage of (b)(2) certification: that Indiana GM dealers would be bound to a judgment or settlement in this case without notice or the opportunity to opt out. *See* Pls.' Mem. Supp. Mot. Class Cert. at 17. Because of the importance of money damages to Plaintiffs' claims, we believe that class members should have the opportunity to receive notice and opt out. We therefore decline to certify a(b)(2) class, though we recognize that any grant of injunctive relief may affect those who choose not to participate in the suit.

### c. *Rule 23(b)(3)*

A class action is maintainable under Rule 23(b)(3) if we find that "the questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3) (emphasis added). The underlying purpose of Rule 23(b)(3)'s requirements is to assure that a class action has "practical utility" in the suit. *Hylaszek v. Aetna Life Ins. Co.,* No. 94–C–5961, 1998 WL 381064, at *3 (N.D.Ill. July 1, 1998). Rule 23(b)(3) lays out four factors which we consider in analyzing these issues:

> (A) the interest of members of the class in individually controlling the prosecution ... of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by ... members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R.Civ.P. 23(b)(3).

### i. *Predominance*

Predominance is met when " 'one or more of the central issues in the action are common to the class and can be said to predominate ...'." *John Does 1–100 v. Boyd,* 613 F.Supp. 1514, 1530 (D.Minn.1985) (quoting Charles Alan Wright, Arthur R. Miller & Mary Kay Kane § 1778, at 529). Satisfying this criterion "normally turns on the answer to one basic question: is there an essential factual link between all class members and the defendant for which the law provides a remedy?" *Johns,* 145 F.R.D. at 484–85. We have determined that putative class members share a common basis for their suit: the issue of whether GM's marketing practices violate Indiana law. Each of the plaintiffs involved herein alleges that a one percent charge that he or she formerly agreed to pay for use in local advertising has been diverted to GM's national marketing without his or her consent. The legality of this alleged marketing assessment program under Indiana law is the "dominant, central focus" of the proposed class action. While their objections to General Motors' various mar-

keting initiatives may differ, every member of the proposed class shares the desire to reassert control over what it believes is its marketing money and a common belief that General Motors has in essence stolen its money by exerting exclusive control over the marketing funds.

The essence of Defendant's claim that this class cannot be maintained under Rule 23(b)(3) is that the common issue of the legality of the one percent charge will require individual determination of many unique fact issues as well as legal issues arising from oral representations made to some but not all putative class members. In addition, GM maintains that the plaintiffs want different kinds of relief and that their damages must be individually calculated, thus overshadowing any common issues: "In this action, plaintiffs' goals and remedies are as varied and diverse as the named plaintiffs themselves and, indeed, as diverse as every putative class member." Def.'s Mem. Opp. Pl.'s Mot. Class Cert. at 20.

Rule 23(b)(3) class actions commonly involve numerous levels of damages and injury for different class members. *See De La Fuente,* 713 F.2d at 233; *Markham v. White,* 171 F.R.D. 217, 224 (N.D.Ill.1997); *John Does 1–100,* 613 F.Supp. at 1530; *Hernandez v. United Fire Ins. Co.,* 79 F.R.D. 419, 430 (N.D.Ill.1978). In *Johns, supra,* the court certified a class action despite dissimilar damage amounts because "the extent of damages is not an issue" when certifying the class, rather it is a question for the merits of the lawsuit. *Id.* at 485 (citing *Grossman v. Waste Management, Inc.,* 100 F.R.D. 781, 784 (N.D.Ill.1984)). Similarly, the court in *John Does 1–100, supra,* found that common questions of law and fact predominated despite the fact that varying damage levels were involved in the putative class action. *Id.* at 1530. Finally, determining damages in this case will not necessitate minitrials because damages can be calculated easily from General Motors computer records tracking the number of vehicles sold by dealers.

The only possibility that Plaintiffs will need to present individualized proof lies in their IDFPA claim, an element of which is 'coercion.' Assuming that actual coercion must be shown to establish the IDFPA violation, Plaintiffs need not present individualized proof if coercion can be proven on a classwide basis, for example through contracts, agreements and promotional materials uniformly applicable to all members of the proposed class. Other courts addressing this issue under similar fact patterns have held that the need to find coercion will not defeat class certification where it is based upon conduct applicable to the class as a whole. *See Larry James Oldsmobile–Pontiac–GMC Truck Co. v. General Motors Corp.,* 164 F.R.D. 428, 439 (N.D.Miss.1996) ("coercion may be implied on a class-wide basis when the defendant's challenged conduct constitutes a uniform agreement common to class members."); *see also* the discussion in *Lockwood Motors, Inc. v. General Motors Corp.,* 162 F.R.D. 569, 580–581 (D.Minn.1995) and cases cited therein.

We conclude that the common legal questions affecting General Motors' liability predominate over any individualized factual and legal questions involved in this case; however, we note that a class could be decertified if it became evident that Plaintiffs must rely upon facts unique to each dealer to show GM forced dealers to participate in the marketing scheme. To the extent the relevant communications differed according to GM division (e.g., different contracts or letters sent to Oldsmobile versus Pontiac dealers) we can create subclasses if material differences prevent their consideration as a single group, with the exception of Buick dealers unless the communications received by them resemble those sent to another type of dealer. (None of the named plaintiffs is a Buick dealer.)

*ii. Superiority*

Rule 23(b)(3) also requires Plaintiffs to establish that a class action would be the "superior" manner in which to resolve the controversy. It does not appear that individual class members have any particular interest in pursuing separate actions, and we are unaware of any other litigation surrounding this issue already commenced by class members. Thus, the two most relevant issues regarding the superiority of the class action

form highlighted by Rule 23(b)(3) are the desirability of concentrating the actions in this forum and the difficulty that management of such a class action would impose upon us. *See* Fed. R.Civ.P. 23(b)(3)(C), (D).

One reason to favor a class action is to avoid duplicative lawsuits, which would thereby waste the parties' and the courts' time and resources. *See Markham,* 171 F.R.D. at 224; *Johns,* 145 F.R.D. at 485. It is without question that allowing this case to proceed as a class action would allow economies of scale to operate and ultimately reduce the overall burden on the courts associated with pursuing the claims versus maintaining individual actions. Assuming for the moment that all of the potential plaintiffs filed suit individually, the federal courts would be open to an avalanche of suits involving duplicitous discovery and a repetition of legal determinations.

A class action allows discovery to proceed on all of the potential claims jointly. A class action also eliminates the potential that the defendants will be subject to contradictory resolutions of the ultimate legal issue; to wit, the validity of the marketing program, because the issue is resolved vis-a-vis all class members at once. A class action simplifies discovery because the defendants and the court will have to deal with only one plaintiffs' counsel, rather than a separate attorney for each individual plaintiff. Discovery disputes can be resolved and legal determinations made with respect to all of the parties at once instead of one plaintiff at a time.

While class actions may present undue pressure upon defendants to settle cases, this factor alone does not outweigh the advantages we have discussed. For these reasons, we hold that Plaintiffs' putative class action is superior to alternative methods of adjudicating the claims and thus this class action may be maintained under Rule 23(b)(3).

### Conclusion

Plaintiffs' proposed class satisfies the demands of Rule 23(a) and is maintainable under Rule 23(b)(3). Plaintiffs' motion for class certification is therefore *GRANTED.* The class shall be defined, and the action maintained, on behalf of all General Motors dealers in Indiana affected by the marketing program instituted in April of 1999. Plaintiffs shall provide notice to class members pursuant to Rule 23(c)(2), as detailed in our attached order. Certification of the class is conditional, subject to our power at any time prior to final judgment to revoke or alter class certification in the interests of justice and to insure compliance with the requirements of Rule 23. *See* Fed. R.Civ.P. 23(c)(1); *Alliance to End Repression v. Rochford,* 565 F.2d 975, 977 (7th Cir.1977); *Hernandez,* 79 F.R.D. at 433.

